OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION,
Appellant,

v.

SOUTHERN UNION GAS COMPANY,
Appellee.

No. 23942.

United States Court of Appeals
Fifth Circuit.

June 27, 1967.

Rehearing En Banc Denied
Aug. 7, 1967.

Carl A. Parker, Port Arthur, Tex., for appellant.

Robert Q. Keith, Beaumont, Tex., George E. Seay, A. S. Grenier, Claude D. Bell, Jr., Dallas, Tex., Keith, Mehaffy & Weber, Beaumont, Tex., Malone, Seay & Gwinn, Dallas, Tex., of counsel, for appellee.

Before BELL, GODBOLD, and DYER, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The Union brought suit in the District Court in an effort to compel the Gas Company to arbitrate a grievance under the provisions of a collective bargaining agreement. Jurisdiction was founded on § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a). The District Court denied arbitration on the ground that the matter involved was wholly outside the bargaining agreement. This denial presents the issue on appeal. Being of the view that the court erred, we reverse.

The dispute centers around a company job formerly held by Simon Broussard. He was a member of the bargaining unit represented by the Union. The job required that he walk along pipeline rights of way and search for gas leaks using principally his sense of smell in the process. Upon detecting a leak, he would call in a repair crew. Broussard retired in March, 1962. No notices were posted for bids on his job nor was any attempt made to fill his job with an employee covered by the agreement.

About April of 1964 it was brought to the company's attention that Martin Hlavinka, a foreman or supervisor not in the bargaining unit, was checking for gas leaks by walking the line. Hlavinka, however, used a mechanical device known as a "Gastron Leak Detector" instead of his sense of smell to find leaks.

In May of 1964 a grievance was filed with the company by two employees who were union stewards. They alleged that Hlavinka was conducting these activities in violation of the collective bargaining agreement in that the job was allocated to the employees in the bargaining unit. The pertinent sections of that agreement are as follows:

(1) Article XXVI, § 1 defines a grievance:

"A grievance as used in this Contract, means any dispute about the proper application or meaning of this Contract. * * *"

(2) Article V, § 2:

"The Company and the Union agree that interchange of work by employees covered and employees not covered by this Contract shall be allowed only when necessary to properly take care of the Company's responsibilities to the public in cases of emergency.

"Supervisors shall act in a supervisory capacity only, and they shall not perform work of the same nature as is performed by employees covered by this Contract, except when necessary in cases of emergency. They shall not displace any employee covered by this Contract. * * *"

The position of the employees filing the grievance was that Art. V, § 2 of the agreement, supra, was violated by assigning Broussard's former job to foreman Hlavinka. The agreement provided that all grievances were to be handled by arbitration and the necessary steps were set out therein. Art. XXVI, § 1. The company appointed an arbitrator to process the grievance but then refused to go forward on the ground that it had not violated the agreement. The suit followed.

The position of the company here, and presumably in the District Court, is that since the foreman was searching for leaks through the use of a machine or mechanical device rather than his sense of smell, the acts done by him were outside the contract and there was no contractual obligation on the company to arbitrate. In an effort to sustain this position, the company first notes the recognition clause of the contract which expressly excludes supervisors from its terms. Art. II, § 1. Secondly, the company urges that Art. V, § 2, supra, recog-

nizes that some work was that of employees not covered by the agreement. Lastly, it is said that Art. VII, § 8[6] (5) reserved the right to the company to contract out certain work and that the union and the company understood that this right included allowing supervisors to use mechanical devices to detect leaks. The company's further position is that cathodic protection had been introduced into the company's gas system, thereby eliminating considerable leakage and the necessity for Broussard's job.

After considering the pleadings and answers to the requests for admissions and after hearing the testimony of witnesses for both parties, the District Court concluded that the dispute was outside the agreement and hence there was no contractual obligation on the part of the company to arbitrate. No findings of fact were entered.

■ The proper approach for the courts in an arbitration matter such as this was delineated by the Supreme Court in the celebrated Steelworkers trilogy, United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America, AFL–CIO v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The landmark case in this circuit, applying the same principles is Local Union No. 787, Int'l Union of Elec., Radio and Machine Workers v. Collins Radio Co., 5 Cir., 1963, 317 F.2d 214. These cases establish certain broad propositions, namely: (1) Arbitration is desirable and should be encouraged; (2) the duty to utilize arbitration depends on the labor contract; (3) where the clause is a broad one as we have here, i.e., " * * * any dispute about the proper application of meaning of the contract, * * * ", then the parties have manifested a clear desire to utilize the process; and (4) although matters may be excluded from arbitration, such exclusions should be clear and explicit.

■ Courts must be exceedingly careful not to cross the line between deciding arbitrability *vel non* and deciding the case on its merits. Whether a labor agreement requires arbitration is for judicial determination. This is likewise true with respect to determining whether the reluctant party has breached a promise to arbitrate. These questions must be decided in the frame of reference of the four general principles established in the steelworkers trilogy, supra, but the judicial function ends there. We stated in *Collins Radio,* supra:

" * * * Therefore, as with a traditional dispute, whether the contract requires arbitration is a question for judicial determination. But in the judicial ascertainment of this threshold problem, the Court must persistently and conscientiously resist the tempting process of determining, first, that the asserted grievance is palpably unfounded on its own intrinsic merits, so therefore it cannot be concluded that the parties agreed to arbitrate such a dispute. Such approach is indispensable for a scheme which assumes that for their own good reasons, the parties have bargained for a determination of controversies by an arbiter rather than a court. * * * "

■ In this case the Union claimed that the company had violated Art. V, § 2 of the contract. The company claimed that it had not because this work had been either reserved or delegated to management. Thus, there was a dispute about the " * * * proper application or meaning of the contract." Art. XXVI, § 1, supra. See United Steelworkers of America v. American Manufacturing Co., supra, 363 U.S. at p. 569, 80 S.Ct. 1343. The District Judge heard testimony to find whether Hlavinka was doing the same work as that done by Broussard. In so doing he crossed the line into the arbitrator's domain. The evidence and the decision thereon went beyond deciding whether the agreement, on its face, made the claim asserted arbitrable. This a court may not do. *Collins Radio,* supra. Cf. Taft Broadcast-

ing Company v. Radio Broadcast Technicians Local Union No. 253, 5 Cir., 1962, 298 F.2d 707. There is no clear exclusion of the claim in the agreement and we hold that it was arbitrable.

Reversed and remanded for further proceedings not inconsistent herewith.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 25(a), subpar. (b), the Petition for Rehearing En Banc is denied.