**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY CO., Defendant.**

**Civ. No. C 71–145.**

United States District Court,
N. D. Ohio, W. D.

Sept. 27, 1971.

Thomas J. Murray, Jr., Sandusky, Ohio, for plaintiff.

John M. Curphey, Toledo, Ohio, for defendant.

## OPINION

DON J. YOUNG, District Judge:

This cause came to be heard on plaintiff's motion for a preliminary injunction restraining the defendant, Norfolk & Western Railway Company, its agents, servants, employees' and all persons in active concert and participation with it, pending a final hearing and determination of this action from:

(1) violating the terms of the collective job protection agreement entered into on January 10, 1962;

(2) violating and disobeying orders of the Interstate Commerce Commission by failing and refusing to pay, in full, the monetary benefits provided for in the ICC order approving the job protection agreement, which safeguarded the rights of the employees of the various carriers, so they would not be adversely affected by the merger; and

(3) from continuing to make any adjustments or reductions in the protective benefits required by the terms and conditions of the collective agreements, as a result

of Public Law 91–169, the Hours of Service Act, 45 U.S.C. § 62; and upon a motion to dismiss *sua sponte* for failure to have exhausted administrative remedies provided for in the 1962 agreement.

The uncontroverted facts are as follows:

1. While Norfolk & Western had applications pending before the ICC for authority

(1) to merge the properties and franchises of the New York, Chicago and St. Louis Railroad Company;

(2) to lease the lines of Wabash Railroad Company and other franchises;

(3) to purchase from the Connecting Railway Company its line of railroad between Columbus, Ohio and Sandusky, Ohio, and

(4) various other applications which were or may have been subsequently filed with the ICC pursuant to Section 5(2) of the Interstate Commerce Act;

Norfolk & Western and the various railway associations forming the United Transportation Union, entered into an agreement for the purpose of protecting the interests of the employees of the carriers in question, from being placed in a worse position with respect to their employment as a result of the merger. By so doing, the railroad employees were not removing their opposition to the pending applications, but were cognizant that the merger might be approved notwithstanding their opposition.

2. Section 1(d) of the job protection agreement provides in part:

In the event *any* dispute or controversy arises between Norfolk & Western and any labor organization signatory to this Agreement with respect to the interpretation or application of any provision of this Agreement * * * such dispute may be referred by either party to an arbitration committee for consideration and determination. Upon notice in writing served by one party on the other of intent by that party to refer the dispute or controversy to an arbitration committee, each party *shall*, within ten days, select one member of the arbitration committee and the two members thus chosen shall endeavor to select a third member who shall serve as chairman * * *. Should the two members be unable to agree upon the appointment of the third member within ten days, either party may request the National Mediation Board to appoint the third member, whose compensation and expenses shall then be paid in accordance with existing law. The decision of the majority of the arbitration committee shall be final and binding. (Emphasis Added).

3. The Interstate Commerce Commission incorporated the protective job agreement into its order of approval. Pursuant to 49 U.S.C. § 5(2) (f), prior to the Commission's giving its approval to a merger between carriers, the Commission must first effectuate a fair and equitable arrangement to safeguard the interests of the railroad employees affected.

4. On November 17, 1970, Norfolk & Western issued a letter to all the General Chairmen, announcing that as a result of the enactment of the 1969 amendment to the Hours of Service Act, which went into effect on December 26, 1970, as soon as administratively possible, Norfolk & Western would begin to reduce the payments of protective benefits under the job protection agreement. Norfolk & Western contended that the premerger average monthly compensation was based upon 16 hours of continuous availability for service in a 24 hour period, and as a result of the enactment of the amendment an employee is available for only 14 hours, and after December 26, 1971, will be available for only 12. Accordingly, the defendant indicated that the prior formula would be altered.

5. In response to defendant's letter, the United Transportation Union, hereinafter UTU, stated that it would consider the proposed alteration "a clear

violation of the major dispute procedures of the Railway Labor Act, and contrary to the Interstate Commerce Commission orders approving these respective mergers." However, the BLE acknowledged the validity of the adjustment and stated:

> We agree that any reduced earnings resulting from changes in the Hours of Service Act would not be due to mergers. The merger protection agreements provide protection for employees adversely affected by mergers.

6. On March 9, 1971, defendant wrote the UTU Chairman formally invoking the arbitration provision of the job protective agreement incorporated into the Commission order of approval, to resolve the dispute. Norfolk & Western named Andy Getman as the carrier member of the Arbitration Committee.

7. In May, 1971, defendant began issuing reduced protective benefit checks reflecting the Hours of Service Reduction.

8. UTU authorized all Norfolk & Western General Chairmen to take a strike ballot from the local chairman, within their respective jurisdiction.

9. On March 11, 1971, F. A. Hardin, National Vice President of the UTU, met with representatives of the defendant and announced that UTU members had authorized a strike with regard to the dispute. The Norfolk & Western representatives argued that the dispute was over the interpretation and application of the job protection agreement, and therefore arbitration was the only appropriate method of resolving it.

10. On March 19, 1971, the National President of the UTU wrote the defendant appointing C. F. Caldwell as the UTU member of the Arbitration Committee and expressed the view that in addition to considering the merits of the dispute, the Arbitration Committee should consider whether the dispute was appropriate for arbitration.

11. On March 23, 1971, plaintiff's arbitration representative was contacted by defendant's representative as to when would be an opportune time to meet in pursuance of the arbitration procedure. On March 27, 1971, defendant's representative inquired as to the aforementioned via a telephone conversation and was informed that plaintiff's representative would be unavailable until sometime after April 29, 1971, which was subsequently postponed until the week of June 7th. On May 11, 1971, defendant's representative stated he would be available on June 7th or for the full week commencing June 14, 1971. However, on May 14, 1971, the instant suit was filed.

■ It is axiomatic that an injunction is an extraordinary remedy and will be issued only upon the satisfaction of various requisites. Plaintiff has failed to demonstrate that its remedy at law is inadequate. Damages will make the union members whole. Thus, there is an absence of a showing of irreparable harm. Furthermore, plaintiff is not likely to ultimately prevail upon a final hearing of this case. Therefore, the motion for a preliminary injunction will be denied.

The ultimate issue in the case at bar is whether the reduced payments of protective benefits under the job protection agreement, implemented by Norfolk & Western subsequent to the enactment of the amendment to the Hours of Service Act, constituted a violation of the 1962 job protection agreement, which was incorporated in the ICC Order of June 24, 1964, Nemitz v. Norfolk and Western Railway Co., 436 F.2d 841 (6th Cir.), cert. granted, 402 U.S. 994, 91 S.Ct. 2171, 29 L.Ed.2d 159 (May 25, 1971), to prevent the employees of the carriers involved in the merger from being adversely affected.

According to the provisions of the job protection agreement of 1962, any dispute or controversy arising between the signatory parties

> with respect to the INTERPRETATION or APPLICATION of any provision of this Agreement * * * such dispute may be referred by either

party to an arbitration committee for consideration and determination.

In resolving the aforementioned ultimate issue, it would be necessary for this Court to interpret the various provisions of the job protection agreement to ascertain whether it is applicable to the payment of reduced benefits arising from the amendment to the Hours of Service Act. In light of the bargained-for-arbitration provision of the collective job protection agreement, this Court is precluded from resolving the ultimate issue.

The sole question before this Court is whether the labor agreement in question requires arbitration with regard to the dispute which has arisen. According to the provisions of the job protection agreement, upon notice in writing served upon the other party specifying the intent of the furnishing party to refer the dispute or controversy to an arbitration committee, which was accomplished on March 9, 1971, the other party must within ten days select a member of the arbitration committee, which was so done on March 19, 1971. Thereafter, the two elected members must choose the third member who shall serve as chairman. However, if they have not selected the third member within ten days, either party may request the National Mediation Board to so appoint.

■ It is the conclusion of the Court that the arbitration clause in question was permissive until such time as the railroad invoked arbitration. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Bonnot v. Congress of Independent Unions Local #14, 331 F.2d 355 (8th Cir. 1964); Batts v. Louisville & Nashville R. R. Co., 316 F.2d 22 (6th Cir. 1963); Brotherhood of Locomotive Engineers v. Chicago & Northwestern Ry. Co., 314 F.2d 424 (8th Cir. 1963), cert. denied, 375 U.S. 819, 84 S.Ct. 55, 11 L.Ed.2d 53 (1968); New Orleans & Northeastern R. R. Co. v. Bozeman, 312 F.2d 264 (5th Cir. 1963); Deaton Truck Line, Inc. v. Local Union #612, 314 F.2d 418 (5th Cir. 1962); Nemitz v. Norfolk & Western Railway Co., 287 F.Supp. 221 (N.D. Ohio 1968), aff'd, 436 F.2d 841 (6th Cir.), cert. granted 402 U.S. 994, 91 S.Ct. 2171, 29 L.Ed.2d 159 (May 25, 1971), aff'd 92 S.Ct. 185 (November, 1971). Since this was done on March 9, 1971, arbitration is required. The holdings of the aforementioned courts are not that arbitration must be utilized in all cases before a party can take his claim into federal court for a determination on the merits, but rather where one of the parties has invoked the arbitration clause exercising its election under the permissive language, then the dispute MUST be settled by an arbitrator, or the clause would be meaningless. Nemitz v. Norfolk & Western Railway Co., 287 F.Supp. 221 (N.D.Ohio 1968). Thus, plaintiff has failed to exhaust its administrative remedies under the incorporated agreement of 1962.

The broad arbitration clause is a clear manifestation by the parties to utilize that process in the event of a dispute with regard to the interpretation or application of any provision of the agreement. Oil, Chemical & Atomic Wkrs. Int. U. v. Southern Union Gas Co., 379 F.2d 774 (5th Cir. 1967). However, that process was not utilized. Accordingly, plaintiff's complaint will be dismissed and the matter should be referred to arbitration as specified in the 1962 collective protective agreement, which was incorporated within the ICC Order of June 24, 1964, as the UTU cannot sue Norfolk & Western directly for the alleged breach of the 1962 agreement. Batts v. Louisville & Nashville Railroad Co., supra; Brotherhood of Locomotive Engineers v. Chicago & Northwestern Ry. Co., supra, at 431–432, where the court stated that the plain language of the congressional act conferred exclusive and plenary jurisdiction upon the ICC to approve mergers and relieve carriers from all other restraints of federal law, without carving a specific exception with regard to the Railway Labor Act; Nemitz v. Norfolk & Western Railway Co., 287 F.Supp. 221 (N.D.Ohio 1968),

which shows the inapplicability of a contrary provision of the Railway Labor Act.

An order will be entered in accordance with this opinion.