**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 2188, Plaintiff-Appellant,**

**v.**

**WESTERN ELECTRIC COMPANY, INCORPORATED, Defendant-Appellee.**

No. 80–3523.

United States Court of Appeals, Fifth Circuit.* Unit A

Nov. 18, 1981.

Rehearing and Rehearing En Banc Dec. 24, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Barker, Boudreaux, Lamy, Gardner & Foley, Louis L. Robein, Jr., New Orleans, La., for plaintiff-appellant.

Tucker, Martin, Holder, Jeter & Jackson, Jeffrey Victory, Shreveport, La., for defendant-appellee.

Before SKELTON,** Senior Judge, and RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

On September 28, 1977, the International Brotherhood of Electrical Workers, Local 2188 filed a grievance with the Western Electric Company. The union claimed that all of the "Group I Mechanics" in a certain department—about forty employees— should be reclassified as "Group II Machinists" because of the work the company had them performing. The company denied the grievance by letter of January 11, 1978, and the union made a timely demand for arbitration by letter of January 27, 1978.

In a letter dated March 21, 1979, the company took the position that the group claim was not arbitrable.[1] The union brought this suit to compel arbitration. Both sides moved for summary judgment. The district court granted summary judgment to the company, relying entirely on the terms of two collective bargaining agreements between the union and the company.

The two agreements in question are the "General Agreement" between the union and the company, covering the terms and conditions of employment for all union members, and the "Journeyman Trades Plan Agreement" ("JTPA"), covering certain terms and conditions, including wages and job classifications, for certain skilled employees. Arbitrability of disputes over job classifications under the JTPA is governed by Article 5(2)(a) of that agreement, which provides in pertinent part:

A grievance involving . . . the question whether an employee has been classified in the appropriate JOURNEYMAN TRADES OCCUPATION . . . may be processed by the UNION in accordance with the provisions of . . . ARTICLE 11, ARBITRATION of the GENERAL AGREEMENT, provided that the authority of the arbitrator, in any such case, shall be limited to a determination as to whether the COMPANY's judgment has been unreasonably exercised . . . .

Article 5(1) of the JTPA makes it clear that, "except as specifically provided . . . , neither such grievance nor the provisions of this Agreement shall be subject to the provisions of ARTICLE 11, ARBITRATION of the GENERAL AGREEMENT."

The company argues, and the court below agreed, that the use of the term "an employee" in Article 5(2)(a) of the JTPA

---

** Senior Judge of the United States Court of Claims, sitting by designation.

1. This letter was written after the parties had selected an arbitrator and set an arbitration date. The parties dispute the precise sequence of events and the substance of certain conversations between representatives for the union and the company, the union arguing that the company has waived, or should be estopped from raising, any objection to the arbitration. Because we conclude that the claim was arbitrable, we find it unnecessary to resolve these factual and legal issues.

makes it clear that the question whether a group of employees has been properly classified is not arbitrable.[2] We disagree.

In *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court established the rule for interpreting arbitration clauses in collective bargaining agreements:

> An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Id.* at 582–83, 80 S.Ct. at 1353.[3] Thus, the question presented is whether we can say "with positive assurance" that a clause covering a dispute concerning "an employee" does not cover an identical dispute concerning "employees."

The company argues that it did not agree to submit to what it terms "group arbitration." It concedes that the dispute over each of the forty employees' classifications is arbitrable, yet contends that the use of the term "an employee" manifests an intent to submit only issues involving one employee at a time. It offers no extrinsic evidence, such as bargaining history,[4] to support this interpretation; and, of course, the

2. The company and the district court also point to one sentence of the arbitration provisions in the General Agreement, which become applicable once it is determined that the JTPA makes the claim arbitrable. That sentence provides, "Each referral to arbitration shall embrace but one (1) ... matter in dispute, unless otherwise stipulated by agreement between the UNION and the COMPANY." Reliance on this provision, however, simply begs the question of what is "one matter in dispute" under the JTPA. As the company itself vigorously asserts, *see* note 3 *infra*, the General Agreement, with its broad arbitration clauses, is separate from the JTPA; thus, it is not the primary source for determining which claims are arbitrable under the JTPA.

3. The company argues, without citation of supporting authority, that the *Warrior* "presumption of arbitrability" is inapplicable because the arbitration clause at issue in *Warrior* was a "standard" or "broad" arbitration clause—providing for arbitration " 'as to the meaning and application of the provisions of th[e] Agreement,' " 363 U.S. at 576, 80 S.Ct. at 1349— while the clause in the JTPA is a "narrow" one. We reject this argument. While *Warrior* and its Supreme Court progeny have all involved "standard" arbitration clauses, the Court has never indicated, in its statement of the rule, that the presumption is limited to such broad clauses. *See, e. g., Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254–55, 97 S.Ct. 1067, 1073–74, 51 L.Ed.2d 300 (1977); *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 376–80, 94 S.Ct. 629, 636–38, 38 L.Ed.2d 583 (1974). Such a limitation would render the presumption of little value as a rule of construction: we would first have to determine that the arbitration clause is "broad" enough to cover all contractual disputes, and only then apply the presumption (when it is no longer needed). Moreover, this court has consistently applied the pre-

sumption to arbitration clauses of varying breadth. *See, e. g., Waverly Mineral Prods. Co. v. United Steelworkers*, 633 F.2d 682 (5th Cir. 1980) (clause providing only for arbitration of grievances concerning discharge). The narrowness of an arbitration clause will of course limit the court to determining whether the asserted claim is within its narrow confines: we will not read a "clause of limited scope" to override a specific exclusion when extrinsic evidence makes clear that the asserted claim is within the exclusion, *International Union of Operating Eng'rs v. Sid Richardson Carbon Co.*, 471 F.2d 1175, 1178 (5th Cir. 1973), nor will we adopt an unreasonable interpretation of the words in order to find a dispute arbitrable, *see Gangemi v. General Elec. Co.*, 532 F.2d 861, 865–66 (2d Cir. 1976). But in determining whether a dispute is within the confines of the arbitration clause, the presumption of arbitrability applies, regardless of whether one party characterizes the clause as "narrow."

4. *See generally Communications Workers v. Southwestern Bell Tel. Co.*, 415 F.2d 35, 40–41 (5th Cir. 1969) (dictum) (limited exception to general rule that issue must be decided with reference to the words of the bargaining agreement alone).

The company does point out that the *grievance* procedure set out in Article 10 of the General Agreement covers complaints by "[a]ny individual employee or group of employees," and contrasts this phrase with the words "an employee" in the *arbitration* provisions of the JTPA. We fail to see the significance of this contrast. The company points to no evidence that these two clauses were drafted with reference to one another; indeed, the company is at great pains to point out that these agreements are "entirely separate." Brief for Appellee at 7; *see* notes 2 & 3 *supra*. Thus, the differing terminology could as well be attributable to what different draftsmen thought was neces-

union disputes that the words "an employee" were used with any such intent. If the company intended the words "an employee" to have such an effect, we think that it had to make its understanding much clearer than this.

If we were interpreting a statute giving a right of action to a "person," rather than a contractual clause granting a right of arbitration, we surely would not hold that the use of the word "person" excluded, as a substantive matter, the possibility that the action could be brought by several "persons." If we did, then no joint action or class action could be brought under such a statute, since our court-made rules of civil procedure do not and cannot amend the substantive rights granted by Congress. Yet, our statute books are teeming with provisions which grant a right of action to the singular "person," and which are often the basis of multi-plaintiff litigation.[5] The statutory analogy is a fitting one, for "[t]he collective bargaining agreement ... is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate.... It calls into being a new common law—the common law of a particular industry or of a particular plant." *Warrior*, 363 U.S. at 578–79, 80 S.Ct. at 1351.

The company argues that separate arbitrations are required because the forty employees "perform various and varying functions." This contention addresses the merits of the union's claim that all forty employees are misclassified; the merits are for the arbitrator, not the court, to decide.

*Warrior*, 363 U.S. at 585, 80 S.Ct. at 1354. Similarly, any argument that the provisions of the two bargaining agreements impose a procedural requirement that each employee's classification be considered separately is for the arbitrator. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557–58, 84 S.Ct. 909, 918–19, 11 L.Ed.2d 898 (1964); *Tobacco Workers International Union v. Lorillard Corp.*, 448 F.2d 949, 954 (4th Cir. 1971); *Avon Products, Inc. v. International Union, UAW*, 386 F.2d 651, 658–59 (8th Cir. 1967). We of course express no opinion on these questions; we hold only that the substance of the union's claim is arbitrable under the terms of the JTPA and the General Agreement.

Since the company offered nothing more than the terms of these two agreements in cross-moving for summary judgment, the district court should have rendered summary judgment for the union. On remand, therefore, the district court shall enter an order compelling the company to arbitrate the union's grievance.

**REVERSED** and **REMANDED** with instructions.

SKELTON, Senior Judge, dissenting.

I respectfully dissent. The Supreme Court has held in various cases that an employer cannot be compelled to arbitrate an issue that he has not agreed to arbitrate. *See United Steelworkers v. Warrior & G. Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960) where the court said:

sary to provide for group arbitration, *cf.* note 5 *infra* (collecting statutes written in the singular but commonly used for multi-plaintiff litigation), as to any intent to exclude group arbitration. The union could just as well argue that the omission of the word "individual" in the JTPA manifests an intent not to limit JTPA issues to "individual" arbitration. Neither inference is a strong one. The strength of any inference to be drawn from this contrast is weakened even further by the fact that the quoted phrase is from the General Agreement's grievance, not arbitration, provisions. Without any evidence that the contrasting phrases were consciously written to accomplish the specific

result the company ascribes to them, we cannot attach much significance to the contrast.

**5.** *See, e. g.*, 42 U.S.C. § 2000e–5(f)(1) (granting the right to bring a civil action to "*the person* claiming to be aggrieved") (emphasis added); 42 U.S.C. § 1983 (granting right of action to "any *citizen* ... *or* other *person* " subjected to deprivation of federal rights under color of state law) (emphasis added); 15 U.S.C. § 78i (granting right of action to "*the person* ... injured" by manipulation of security prices) (emphasis added); 15 U.S.C. § 78r (granting right of action to "*A person* seeking" damages for misleading statements under Securities Act of 1934) (emphasis added).

For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.

In *Wiley & Sons v. Livingston*, 376 U.S. 543, 546–547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898, 902–903 (1964), the Supreme Court held:

[A]n employer has no obligation to arbitrate issues which it has not agreed to arbitrate * * *.

We held in *Piggly Wiggly v. Piggly Wiggly, Inc.*, 611 F.2d 580, 583 (5 Cir. 1980):

The arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him.

There is neither a sentence, paragraph nor provision in the agreements between the Union and the employer in this case wherein the employer agreed to arbitrate the classification of the 40 workers involved on a group basis. Neither is there such an agreement in the correspondence or oral conversations between the parties. Yet, despite the total lack of such an agreement, and in the face of the above decisions of the Supreme Court and of this court, the majority decision forces the Company to arbitrate an issue it never agreed to arbitrate. In my opinion, this is contrary to law and I cannot agree with it.

The facts in this case are substantially as follows:

International Brotherhood of Electrical Workers, Local 2188 (hereinafter Local 2188 or the Union) brought this suit seeking an order from the court compelling Western Electric Company, Inc. (hereinafter Western Electric or the Company) to proceed with Local 2188 to arbitration of a grievance arising under a collective bargaining agreement between Local 2188 and Western Electric known as a "General Agreement," as well as a supplementary bargaining agreement entitled "Journeymen Trades Plan Agreement." Pertinent provisions of these agreements will be quoted and discussed below.

On September 28, 1977, Local 2188 initiated a grievance on behalf of "all Group 1 Mechanics" involving about 40 mechanics at positions set forth and described in the Journeymen Trades Plan Agreement, contending that they should all be reclassified to the higher position of "Group 2 Machinists," a job position also set forth in the Journeymen Trades Plan Agreement. The Group 2 Machinists were workmen of higher skills and were paid more for their work than the Group 1 Mechanics.

The grievance was processed through all four levels of the grievance procedure as provided in Article 10 of the General Agreement culminating in the fourth level response of Western Electric, dated January 11, 1978, over the signature of H. W. Wilkening, Bargaining Agent for Western Electric, denying the grievance of Local 2188 on the grounds that the Group 1 Mechanics were not performing the functions or using the skills that place them at the Group 2 Machinists level. Local 2188, by letter dated January 27, 1978, demanded that Western Electric proceed with Local 2188 to binding arbitration of the Group 1 Mechanics' grievance on the ground that the Group 1 Mechanics were performing the same tour of duty as the Group 2 Machinists.

On February 14, 1978, the Federal Mediation and Conciliation Service was requested in writing by both parties to supply a panel of arbitrators to Western Electric and Local 2188. A panel of arbitrators was submitted by the Service by letter dated February 28, 1978. The parties selected Harry G. Erbs as arbitrator to conduct an arbitration hearing in Shreveport, Louisiana, on April 24, 1979.

Western Electric requested Local 2188 to "specify the nature of the dispute" arising under the Group 1 Mechanics' grievance by the following letter of H. W. Wilkening the Company's bargaining agent, dated September 29, 1978, addressed to F. G. Yount, President of Local 2188:

The Company is in receipt of your letters requesting arbitration on Grievance Cases 77–219–4, 78–82–4, and 78–221–4. However, in accordance with the provisions specified in Article 11, Arbitration, of the General Agreement-more specifi-

cally Paragraph 2, I am requesting that you "specify the nature of the dispute and the reasons therefor, including reference to the specific provision or provisions of this Agreement in dispute." [1]

Please forward this information at your earliest convenience.[2]

The Union answered the foregoing letter on October 9, 1978, by the following letter from Mr. Yount to Mr. Wilkening:

This is in response to your letter dated September 29, 1978, requesting that we specify the nature of the dispute in accordance with Paragraph 2 of Article 11 of the General Agreement. I have reviewed our formal request for arbitration and I feel that we have met the requirements as set forth in the above-mentioned Article and Paragraph of the General Agreement.

Thereafter, on October 19, 1978, Mr. Wilkening, acting for the Company, wrote Mr. Yount:

On September 29, 1978, the Company sent you a letter requesting specific information relevant to your arbitration demand on Case Nos. 77–219–4, 78–82–4 and 78–221–4. Your response on October 9, 1978, stated there would be no additional information presented. Therefore, I feel that I must invoke the provisions of the Journeyman Trades Plan Agreement—specifically Article 5, Paragraph 2, which identifies arbitrable issues related to the Journeyman Trades Plan; and deny your request for arbitration in these cases.[3]

---

**1.** Grievance case 77–219–4 is the case involved in this litigation.

**2.** Pertinent provisions of "Article 11—Arbitration" of the General agreement are as follows:

ARTICLE 11—ARBITRATION

1. *Any dispute arising between the UNION and the COMPANY with respect to the interpretation of any provision of this Agreement or the performance of any obligation hereunder may be referred,* during the life of this Agreement, *to an arbitrator in accordance with the procedure hereinafter set forth, provided:*
   (a) The procedure for the settlement of grievances, ARTICLE 10, GRIEVANCE PROCEDURE, has been exhausted, and
   (b) *Such dispute does not involve a provision of this Agreement which specifies that it is not subject to arbitration* or from which it appears that the determination of the matter over which the dispute arose is within the judgment or discretion of the COMPANY.

2. Either party may institute arbitration proceedings not later than twenty (20) days following the date of receipt of final answer of the COMPANY in accordance with Paragraph 1(a) of this article by written demand on the other party specifying the nature of such dispute and the reasons therefor, including reference to the specific provision or provisions of this Agreement in dispute. However, the right to arbitrate any such dispute shall be deemed waived if either party fails to institute arbitration proceedings within such twenty (20) day period following the date of receipt of the final answer of the COMPANY.

3. *Each referral to arbitration shall embrace but one (1) such matter in dispute, unless*

*otherwise stipulated by agreement between the UNION and the COMPANY.*

\* \* \* \* \* \*

6. *The arbitrator shall have no authority to :*
   (a) *Add to, subtract from, or in any way modify the provisions of this Agreement;* or

\* \* \* \* \* \*

(Emphasis supplied).

**3.** Article 5 of the Journeyman Trades Plan Agreement provides as follows:

ARTICLE 5—GRIEVANCE PROCEDURE AND ARBITRATION

1. A grievance arising under or related to the provisions of this Agreement shall be subject to the grievance procedure prescribed in ARTICLE 10, GRIEVANCE PROCEDURE of the GENERAL AGREEMENT. *However, except as specifically provided in Paragraph 2, neither such grievance nor the provisions of this Agreement shall be subject to the provisions of ARTICLE 11, ARBITRATION of the GENERAL AGREEMENT.*

2. *A grievance involving :*
   (a) *the question whether an employee has been classified in the appropriate JOURNEYMAN TRADES OCCUPATION (listed in APPENDIX A),* or,
   (b) the question whether a new or a modified existing JOURNEYMAN TRADES OCCUPATION has been assigned to the appropriate JOURNEYMAN TRADES GROUP, either TRADES GROUP 1 or TRADES GROUP 2, or
   (c) the withholding of a wage progression increase as provided in Paragraph 3.3 of ARTICLE 15, WAGES of the GENERAL AGREEMENT.

Mr. Yount answered the above letter on November 8, 1978, by writing Mr. Wilkening:

In response to your request for additional information pertaining to grievance cases 77–219–4, 78–82–4 and 78–221–4, I submit the following information:

77–219–4 specifically relates to violation of Article 5, Section 2, Paragraph (a) of the Journeyman Trades Plan of the General Agreement.

\* \* \* \* \* \*

Finally, Mr. Wilkening wrote Mr. Yount on March 20, 1979, the following letter in which he refused to arbitrate the grievance of the Group 1 Mechanics on a group basis but offered to arbitrate the matter individually as to each employee:

This is in reply to your letter of January 30, 1978, in which you requested arbitration on the grievance concerning the reclassification of Group 1 Machine and Equipment Mechanics in Department 544.

Paragraph 3 of Article 11—ARBITRATION, of our General Agreement states, "Each referral to arbitration shall embrace but one (1) matter in dispute, unless otherwise stipulated by agreement between the UNION and COMPANY."

Also, Paragraph 2(a) of Article 5—Grievance Procedure and Arbitration of the Journeyman Trades Plan Agreement limits arbitration in cases involving the Trades Agreement to, among others, "A grievance involving the question whether an employee has been classified in the appropriate JOURNEYMAN TRADES OCCUPATION (listed in Appendix A). . . ."

Since all of the individuals covered in your grievance perform various and varying functions, I cannot agree to arbitrate this case in the manner in which you request.

Please submit the name of the individual employee you would like to submit for arbitration and the appropriate action will be taken.

After Mr. Yount received the above letter, the attorney for the Union, Mr. James A. Burnett, had telephone conversations with Mr. Wilkening and with Bob Benson, attorney for the Company, regarding arbitration of the grievance. Burnett claims in his deposition that Wilkening agreed to the arbitration in these telephone conversations and later withdrew his agreement. Wilkening testified by deposition that he never agreed to arbitrate the grievance on a group basis, but that he had agreed to arbitration on an individual case-by-case basis. Both Burnett and Wilkening testified that they never discussed arbitrating the dispute on a group basis and that neither of them ever raised the question in their telephone conversations.

The Company states in its brief that the Union is presently processing all of the affected employees individually through the grievance process. This has not been denied by the Union. The grievance proce-

(d) the determination that *an employee* in a JOURNEYMAN TRADES OCCUPATION assigned to TRADES GROUP 2 does not meet the prescribed criteria to progress beyond the CONTROL RATE, or
(e) the question whether the COMPANY has granted proper retroactive pay adjustments under the provisions of Paragraph 2 of ARTICLE 3, PAY TREATMENT of this Agreement, or
(f) the question whether *a JOURNEYMAN* has been treated in accordance with ARTICLE 4, SPECIAL LAY–OFF CONSIDERATION, of this Agreement,
*may be processed by the UNION in accordance with the provisions of ARTICLE 10,*

*GRIEVANCE PROCEDURE and ARTICLE 11, ARBITRATION of the GENERAL AGREEMENT, provided that the authority of the arbitrator, in any such case, shall be limited to a determination as to whether the COMPANY'S judgment has been unreasonably exercised* and provided further, that in grievances involving Paragraph 2(b) the authority of the arbitrator shall be further limited to a determination as to whether the COMPANY acted without any reasonable basis in assigning the JOURNEYMAN TRADES OCCUPATION involved in such grievance. (Emphasis supplied).

dure is set forth in Article 10 of the General Agreement and involves six steps.[4]

The Union refused to participate in an arbitration of the grievance on an individual case-by-case basis as suggested by the Company, and filed this suit to require group arbitration.

In the trial court, the parties filed cross-motions for summary judgment. The court denied the motion of the Union and granted the motion of the Company and dismissed the Union's case on the ground that the Company did not agree in the contracts to arbitrate the Group 1 Mechanics on a group basis. This appeal followed.

The principal issue in this case is whether or not the Company and the Union agreed in the General Agreement and in the Journeyman Trades Plan Agreement, considered together, that trade classification grievances of the Group 1 Mechanics would be submitted to arbitration on a group basis or on an individual case-by-case basis.

It is well settled by decisions of the Supreme Court and by this court, as well as by circuit courts of appeals in other circuits, that whether the parties have agreed to submit a particular dispute to arbitration depends on the provisions of the contract, and whether the contract requires arbitration is a question for judicial determination. The Supreme Court held in *United Steelworkers v. Warrior & G. Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960):

4. Article 10 of the General Agreement provides as follows:

*ARTICLE 10—GRIEVANCE PROCEDURE*

1. To provide for the expeditious and mutually satisfactory settlement of grievances arising with respect to wages, hours of work and other conditions of employment, the procedures hereinafter set forth shall be followed.

2. *Any individual employee or group of employees* shall have the right at any time to present complaints to the COMPANY and to have such complaints adjusted, without the intervention of the UNION, as long as the adjustment is not inconsistent with the terms of this Agreement and provided that the UNION has been given opportunity to be present at such adjustment.

3. *When an employee or group of employees* wishes to have a grievance presented for settlement by the UNION, such grievance shall, except as otherwise provided in this or any other written agreement between the COMPANY and the UNION, be presented as outlined below, and settlement effected at any one of the steps indicated:

ORAL OR INFORMAL PROCEDURE

| Step | Representing the UNION |
| --- | --- |
| (1) Discussion at Section Chief Level | UNION Representative |
| (2) Discussion at Department Chief Level | UNION Representative and Officer of the UNION (or Chief Steward) |

WRITTEN OR FORMAL PROCEDURE

If a satisfactory settlement cannot be reached informally at Step (2) and the UNION wishes to process the grievance further, the grievance shall be reduced to writing specifying the nature of the dispute and identifying the specific provision(s), if any, of this agreement in dispute and presented at each Step to the level of supervision indicated below until settled:

| (3) Discussion at Assistant Manager Level (or in a Wage Incentive or Job Grade Grievance Committee) | Same as Step (2) except for a Joint Committee not more than two (2) UNION Representatives |
| --- | --- |

(4) Grievances not satisfactorily settled in accordance with the foregoing procedure may be presented in writing to the COMPANY's Bargaining Agent by the UNION's Bargaining Agent. In such event, not more than four (4) representatives of either party shall ordinarily participate in a discussion of a grievance. An international Representative may participate as one of the UNION's representatives.

4. When the UNION wishes to process a grievance through a next higher step, it shall present such grievance not later than ten (10) working days after receiving the COMPANY's answer at the previous step; otherwise, the grievance shall be considered closed.

5. Grievance shall be answered by the COMPANY in writing at Step (3) within fifteen (15) standard working days following submission of such grievance, and at Step (4) within thirty (30) standard working days following submission of such grievance.

The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. 363 U.S. at 582, 80 S.Ct. at 1352, 4 L.Ed.2d at 1417.

In *Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), the Supreme Court said:

"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, [1320] 8 L.Ed.2d 462, 465. Accord, e. g., *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, [1353] 4 L.Ed.2d 1409, 1417. The problem in those cases was whether an employer, concededly party to and bound by a contract which contained an arbitration provision, had agreed to arbitrate disputes of a particular kind.

\* \* \* \* \* \*

The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so a fortiori, it cannot be compelled to arbitrate if an arbitration clause does not bind it at all. 376 U.S. at 546–547, 84 S.Ct. at 912, 11 L.Ed.2d at 902–903.

The landmark case in this circuit is *Local U. No. 787, Inter. U. of E., R. & M. Wkrs. v. Collins Radio Co.,* 317 F.2d 214 (5 Cir. 1963). In that case we held:

These principles may be broadly stated. Arbitration is a contractual procedure. The right to demand, or the duty to utilize, arbitration depends on the contract. Therefore, as with a traditional dispute, whether the contract requires arbitration is a question for judicial determination. 317 F.2d at 216.

Judge Griffin Bell in speaking for this court in *Oil, Chemical and Atomic Workers International Union v. Southern Union Gas Co.,* 379 F.2d 774 (5 Cir. 1967), held:

The proper approach for the courts in an arbitration matter such as this was delineated by the Supreme Court in the celebrated Steelworkers trilogy, *United Steelworkers of America v. American Mfg. Co.,* 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers of America, AFL–CIO v. Warrior & Gulf Navigation Co.,* 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The landmark case in this circuit, applying the same principles is *Local Union No. 787, Int'l Union of Elec., Radio and Machine Workers v. Collins Radio Co.,* 5 Cir., 1963, 317 F.2d 214. These cases establish certain broad propositions, namely: (1) Arbitration is desirable and should be encouraged; (2) the duty to utilize arbitration depends on the labor contract; (3) where the clause is a broad one as we have here, i. e., " \* \* \* any dispute about the proper application of meaning of the contract, \* \* \* ", then the parties have manifested a clear desire to utilize the process; and (4) although matters may be excluded from arbitration, such exclusions should be clear and explicit.

Courts must be exceedingly careful not to cross the line between deciding arbi-

---

6. When it is evident that the intervals specified in Paragraphs 4 and 5 above cannot

be met, they may be extended as mutually agreed upon. (Emphasis supplied).

trability *vel non* and deciding the case on its merits. Whether a labor agreement requires arbitration is for judicial determination. This is likewise true with respect to determining whether the reluctant party has breached a promise to arbitrate. These questions must be decided in the frame of reference of the four general principles established in the steelworkers trilogy, supra, but the judicial function ends there. 379 F.2d at 776. *Also see Refinery Employees Union v. Continental Oil Co.*, 268 F.2d 447, 451–452 (5 Cir., 1959); *Lodge No. 12, Etc. v. Cameron Iron Works*, 257 F.2d 467, 471 (5 Cir.), *cert. denied*, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110 (1958); *Piggly Wiggly, Etc. v. Piggly Wiggly, Etc.*, 611 F.2d 580 (5 Cir. 1980); *International Ladies' Garment W. U. v. Ashland Indus., Inc.*, 488 F.2d 641, 644 (5 Cir.), *cert. denied*, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974); *Cresent City Lodge, Etc. v. Boland Marine & Mfg. Co.*, 591 F.2d 1184, 1186–1187 (5 Cir. 1979); and Vol. 8 Federal Regulations of Employment Service—*Contracts: Arbitration*, Sections 66:11–66:15 at 18–23 (1977) with 1981 Supplement) by Karl H. Larsen.

Applying the foregoing principles to the instant case, I now examine the agreements executed by the parties to determine whether the Company and the Union agreed that classification grievances of Group 1 Mechanics would be arbitrated on a group basis.

As stated above, there were in effect two collective bargaining agreements between the Company and the Union:

(1) The General Agreement

(2) The Journeyman Trades Plan Agreement

Although these collective bargaining agreements were effective the same date, August 7, *1977, they are separate agreements. There is no provision in the Journeyman Trades Plan Agreement that makes all of the provisions of the General Agreement applicable to the matters covered by the Journeyman Trades Plan Agreement, but by specific language contained in the Journeyman Trades Plan Agreement certain provisions of the General Agreement are made applicable. In sum, the Journeyman Trades Plan Agreement is an entirely separate collective bargaining agreement from the General Agreement, and no provision of the General Agreement is applicable to the Journeyman Trades Plan Agreement unless the Journeyman Trades Plan Agreement specifically says it is applicable.

The General Agreement, like most collective bargaining agreements, contains provisions covering grievances and arbitration. (Articles 10 and 11). Article 11(1) gives an arbitrator the right to resolve disputes arising under the contract and gives the arbitrator authority to interpret the provisions of the General Agreement. This provision is generally referred to as a "broad arbitration clause".

However, the Journeyman Trades Plan Agreement has its own special provisions and limitations on grievances and arbitration for problems arising under the Plan. For instance, Article 5 of the Journeyman Trades Plan Agreement says:

(1) All grievances for employees covered by the Journeyman Trades Plan Agreement can be handled by the union under Article 10 of the General Agreement;

(2) No grievance arising under the Journeyman Trades Plan Agreement can be taken to arbitration at all unless it fits within one of the questions stated in Article 5, paragraph 2(a–f);

(3) The provisions of the Journeyman Trades Plan Agreement are not subject to arbitration except in the places in Article 5, paragraph 2(a–f) where the provisions of the Journeyman Trades Plan Agreement are specifically mentioned.

The provisions of Article 5, paragraph 2 of the Journeyman Trades Plan Agreement mentioned in sub-paragraphs (b), (e), and (f) are not involved in the instant suit. It should be noted that there is no "broad arbitration clause" contained in Article 5 of the Journeyman Trades Plan Agreement, nor does Article 5 state that the "broad

arbitration clause" in Article 11(1) of the General Agreement is applicable to the Journeyman Trades Plan Agreement. Further, the general language of Article 11(1) of the General Agreement makes it clear that it only applies to the provisions of the General Agreement (". . . with respect to the interpretation of any provision of this Agreement. . . ."). Additionally, the language of Article 5, paragraph 1 of the Journeyman Trades Plan Agreement specifically states that the provisions of the Journeyman Trades Plan Agreement are not arbitrable unless they are made so by paragraph 2.

To summarize, under the grievance and arbitration provisions of the General Agreement, all issues, including contract interpretation, are arbitrable unless specifically excluded in the General Agreement, and the arbitrator has full authority to resolve all disputes including contract interpretation. However, Article 5 of Paragraph 1 of the Journeyman Trades Plan Agreement states that no matters are arbitrable at all unless specifically set forth in Article 5, paragraph 2. The only arbitrable matter set forth in paragraph 2 is that of the proper classification of *an employee* as provided in paragraph 2(a) and even then the authority of the arbitrator is limited to a review of the reasonableness of the Company's judgment. Article 1, paragraph 1 of the Plan provides for sole administration of the Plan by the Company.

The Union contends that arbitration in this case should be held on a group basis. It argues that all of the mechanics were handled as a group through the entire *grievance* procedure and, therefore, should be arbitrated as a group. However, it is clear that the handling of the mechanics as a group during the grievance procedure was proper. Article 5, paragraph 1 of the Journeyman Trades Plan Agreement provides that grievances are to be handled in accordance with Article 10 of the General Agreement. Paragraphs 2 and 3 of the General Agreement specifically provide that a grievance may be presented by an individual employee or *a group of employees*. It should be emphasized that there is a differ-

ence between the *grievance* procedure and the *arbitration* procedure.

Article 5, paragraph 2(a) of the Journeyman Trades Plan Agreement limits arbitration to ". . . the question whether an *employee* has been classified in the appropriate JOURNEYMAN TRADES OCCUPATION . . ." (emphasis added). The words "an employee" means a single worker. A possible reason the Union and the Company agreed to this language specifying arbitration of *an employee's* classification, and not group arbitration of classification, is shown by the testimony in Mr. Wilkening's deposition. He testified that not all Group I Mechanics do the identical job all the time. They perform various jobs and, apparently, on some occasions do some work which is being performed by Group II Machinists. They have different and varying skills, ability and experience. The Company contends that on some occasions when a particular piece of work is being performed by one or more Group I Mechanics and by one or more Group II Machinists, the Group II Machinists are, in fact, doing lower grade work rather than Group I Mechanics doing higher grade work. The Company further contends that Article 1, paragraph 6 of the Journeyman Trades Plan Agreement allows for some overlapping of job function between the two classifications. Thus, it is logical to assume that an arbitrator will have to examine each grievant's work to decide if he is properly classified. However, it is not our function to pass on the merits of the classification claims and I do not do so.

The Company says that Article 11, paragraph 3 of the General Agreement also supports the proposition that group arbitration in the instant case is not appropriate. It provides that, "Each referral to arbitration shall embrace but one (1) such matter in dispute, unless otherwise stipulated by agreement between the UNION and the COMPANY." The Company argues that each employee's work requires separate examination and that arbitrating this case as a group would necessarily involve many different "matter(s) in dispute", and would

violate Article 11, paragraph 3 of the General Agreement.

Under Article 10, paragraphs 2 and 3 of the General Agreement, group *grievances* are allowed, but under Article 5 paragraph 2(a) of the Journeyman Trades Plan Agreement, each employee's classification must be *arbitrated* separately. The language of Article 10, paragraph 3 of the General Agreement uses the identical phrase, "an employee", to denote the singular, but is followed by the phrase "or a group of employees", denoting more than one. The parties could have contracted for group arbitration of classification claims under the Journeyman Trades Plan Agreement, but they did not.

The parties to a collective bargaining agreement are free to contract concerning arbitration. They may contract for a broad arbitration clause or a very restrictive one. The specific provisions of the Journeyman Trades Plan Agreement show that Article 5 covering grievances and arbitration clauses is not a "broad arbitration clause" and that there is no arbitration of any dispute unless specifically stated in Article 5, paragraph 2.

It is clear that the "broad arbitration clause" contained in Article 11, paragraph 1 of the General Agreement does not apply to the Journeyman Trades Plan Agreement. Otherwise, there would be no need for the language in Article 5, paragraph 1 to the effect that the provisions of the Journeyman Trades Plan Agreement are not arbitrable unless made so by paragraph 2, and paragraph 2 only provides for arbitration of the grievance of a single employee and does not authorize arbitration of the grievances of the members of a group or class on a group basis.

After careful consideration of the provisions of the agreements, the briefs and argument of counsel, I conclude that the Company did not agree by the execution of the contracts or otherwise to arbitrate the grievances of the Group 1 Mechanics as a group, and the agreements did not require it to do so. Consequently, the judgment of the district court to this effect is correct.

The Union contends that by agreeing to arbitration and participating in the selection of an arbitrator and setting a date for arbitration, the Company waived its right to object to the arbitrability of class or group grievances. I do not agree. The record shows that group arbitration was never mentioned in the correspondence between the Union and the Company and it was never discussed at all in the oral conversations between Burnett and Wilkening. Under these circumstances, where the Company never agreed either by the contracts or by verbal statements to group arbitration, there was no waiver of its right to object to such procedure. *See Communications Workers of America v. Western Electric Co.*, 397 F.Supp. 1318 (N.D.Ga.1975), aff'd 558 F.2d 816 (5 Cir. 1977) where a controversy was submitted to an arbitrator but the parties could not agree, as here, on the specific dispute to be considered by the arbitrator. The Union argued in that case, as in this case, that the company waived its right to object to the arbitrability of the matter by participating in the arbitration process to the point of disagreement as to the subject matter. The court rejected this argument and held there was no waiver. I would make the same ruling here.

The Union also contends that the Company is bound by estoppel to arbitrate the grievances on a group basis because of its limited participation in the arbitration process, as discussed above. This argument is unpersuasive. The elements of estoppel are not present.

I next consider whether the issue in this case involves *substantive* arbitrability or whether it involves *procedural* arbitrability. Substantive arbitrability is involved when there is a disagreement as to whether the parties contracted to submit the subject matter of the dispute to arbitration. As stated above, this question is to be determined by the court unless the parties agreed that the arbitrator would make this determination. The parties did not so agree in this case. If there is a controversy over whether the parties agreed to submit the *subject matter* of the dispute to arbitration, the issue is one of substance. *See F.*

*Elkouri & E. Elkouri, How Arbitration Works,* (3rd ed., 1973) where it is stated:

Under the federal law the question of substantive arbitrability is for the court when asked to stay or compel arbitration, unless the arbitration clause clearly specifies that the arbitrator shall make the determination. Id. at 172.

*See, also,* 8 Federal Regulation of Employment Service—*Contracts: Arbitration,* Sec. 66:15 (1977) where it is stated:

Whether a dispute between the parties to a collective labor contract is arbitrable, as within the scope of the arbitration agreement contained therein, is for the court, and not for the arbitrators, to determine. However, the arbitrability of a dispute may itself be subject to arbitration if the parties have clearly so provided in the agreement. The questions whether a party to a collective bargaining agreement must arbitrate, *and what issues he must arbitrate,* must be determined by the court on the basis of the contract entered into by the parties. (Emphasis supplied).

On the other hand, the Supreme Court has ruled that questions of procedure are for the arbitrators to decide and not for the courts. The district court is limited to a decision whether the parties have agreed to submit the subject matter of the dispute to arbitration, leaving procedural questions to the arbitrator. *See Operating Engineers v. Flair Builders, Inc.,* 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248–252 (1972); *John Wiley & Sons v. Livingston, supra,* 376 U.S. at 557–558, 84 S.Ct. at 918–919, 11 L.Ed.2d at 909. *See* 6 T. Kheel, *Labor Law* § 24.03 at 24–41 (1978). *See, also, United Steelworkers of America v. American International Aluminum Corp.,* 334 F.2d 147, 150 (5 Cir. 1964), *cert. denied,* 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965). In *John Wiley & Sons v. Livingston, supra,* the Supreme Court said:

Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

\*      \*      \*      \*      \*      \*

*While the courts have the task of determining "substantive arbitrability,"* there will be cases in which arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed. (Emphasis supplied). 376 U.S. at 557, 558, 84 S.Ct. at 918, 919, 11 L.Ed.2d at 909.

Procedural questions usually involve a determination of how the arbitration is to be conducted, i. e., the steps, order, way, method, manner, program or procedure used or adopted by an arbitrator in connection with his handling and disposition of matters submitted to him for arbitration. Such questions may also involve whether conditions precedent to arbitration have been met. *See* 8 Federal Regulation of Employment Service—*Contracts: Arbitration,* Sec. 66:17. Procedural matters do not include or encompass the subject matter of an arbitration, i. e. what is to be arbitrated, as that is a substantive issue that is governed by the contract as interpreted by the court.

In the instant case, we do not have a broad arbitration clause that authorizes an arbitrator to decide what is to be arbitrated. The arbitration clause that governs the arbitration of the grievances of the Group 1 Mechanics is Article 5, paragraph 2, which limits arbitration of pay classifications to the grievance of a single employee. It is well established that the authority and power of an arbitrator is derived from and limited by the provisions of the contract. In *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960), the Supreme Court said:

Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitra-

tor's words manifest an infidelity to this obligation courts have no choice but to refuse enforcement of the award.

See also, Safeway Stores v. American Bakery & Con. W.I.U., Local 111, 390 F.2d 79 (5 Cir. 1968); and Piggly Wiggly v. Piggly Wiggly, Etc., 611 F.2d 580 (5 Cir. 1980). In the case last cited, we held:

Judicial deference to arbitration, however, does not grant carte blanche approval to any decision an arbitrator might make. Machinists, Local 2003 v. Hayes Corp., 5 Cir. 1961, 296 F.2d 238, 243, aff'd on rehearing, 5 Cir. 1963, 316 F.2d 90. The arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution. Torrington Co. v. Metal Products Workers, Local 1645, 2 Cir. 1966, 362 F.2d 677, 680. For that reason, an arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective. International Ladies Garment Workers' Union v. Ashland Industries, Inc., 5 Cir. 1974, 488 F.2d 641, cert. denied, 1975, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68; an arbitrator's award must draw "its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428; Safeway Stores v. American Bakery & Confectionery Workers, 5 Cir. 1968, 390 F.2d 79, 81; Local Union No. 787, International Union of Electrical Radio and Machine Workers v. Collins Radio Co., 5 Cir. 1963, 317 F.2d 214, 216. 611 F.2d at 583.

In the Piggly Wiggly case, supra, we held further:

Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act. See District of Columbia v. Bailey, 1897, 171 U.S. 161, 18 S.Ct.

868, 43 L.Ed. 118. . This statement of issues and designation of the arbiter is frequently incorporated into a separate document, called a submission agreement.

\* \* \* \* \* \*

However, once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority. Washington-Baltimore Newspaper Guild v. The Washington Post Co., D.C.Cir.1971, 143 U.S.App.D.C. 210, 212, 442 F.2d 1234, 1236; Lee v. Olin Mathieson Chemical Corp., D.W.D.Va.1967, 271 F.Supp. 635, 639. See also Textile Workers' Union of America, AFL-CIO, Local Union No. 1386 v. American Thread Co., 4 Cir. 1961, 291 F.2d 894; Truck Drivers, etc., Union, Local 784 v. Ulry-Talbert Co., 8 Cir. 1964, 330 F.2d 562; cf. Continental Materials Corp. v. Gaddis Mining Co., 10 Cir. 1962, 306 F.2d 952, 954 (commercial arbitration). 611 F.2d at 583, 584.

In the instant case, there is no provision in the contract that authorizes the arbitrator to decide what shall be arbitrated. Furthermore, the parties never supplemented the contract by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act, as required by our Piggly Wiggly decision before there can be an arbitration.

I conclude that the arbitration issue in this case is one of substance and not one of procedure, and that before arbitration could proceed the parties were required to agree on the subject matter of what was to be arbitrated and thereafter submit the issue to the arbitrator. The arbitrator had no power or authority in deciding procedural questions to decide what was to be arbitrated.

I would hold that the Company never agreed to arbitrate the classification grievances of the 40 Group 1 Mechanics as a group, and that it cannot be required to

arbitrate this subject matter that it never agreed to arbitrate.[5]

Accordingly, the judgment of the district court should be affirmed.

5. As a practical matter, it may be that the arguments and contentions in this case, pro and con, may amount to no more that "tweedledee" and "tweedledum", because the arbitrator will no doubt conclude when he starts working on the case that it is impossible to arbitrate the proper classification of the 40 workers as a group, and that it is necessary to consider the training, experience, talents, ability and qualifications of each individual worker on a case-by-case basis in order to properly classify him. This is all that the Company ever agreed to, and it is still willing to dispose of the matter on this basis.