United States Court of Appeals
Fifth Circuit

F I L E D

May 10, 2006

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals

for the Fifth Circuit

_____

Nº 05-20281

_____

PAPER, ALLIED-INDUSTRIAL, CHEMICAL AND ENERGY WORKERS
INTERNATIONAL UNION LOCAL NO. 4-2001,

Plaintiff-Appellee,

VERSUS

EXXONMOBIL REFINING & SUPPLY COMPANY,
A DIVISION OF EXXONMOBIL CORPORATION,
DOING BUSINESS AS EXXON COMPANY USA,
A DIVISION OF EXXON CORPORATION; ET AL.,

Defendants,

EXXONMOBIL REFINING & SUPPLY COMPANY,
A DIVISION OF EXXONMOBIL CORPORATION,
DOING BUSINESS AS EXXON COMPANY USA,
A DIVISION OF EXXON CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
Nº 4:03-CV-5139

_____

Before SMITH, BARKSDALE, and DENNIS,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

ExxonMobil Refining & Supply Company ("Exxon") appeals a decision sending to arbitration a grievance filed by the Paper, Allied-Industrial, Chemical and Energy Workers International Union Local No. 4-2001 on behalf of Elizabeth Salinas. We affirm.

I.

In January 2001, Exxon transferred Salinas to the Clerical Unit as a Senior Administrative Assistant because her medical condition had caused her to become unable to perform the duties of her former Instrument Technician position. In late January 2003 Salinas was sent home after being informed that Exxon would no longer accommodate her medical restrictions; in March 2003 she was notified that she would not be permitted to return to work.

That same month, the union filed a grievance alleging that her discharge was based on a "disability discrimination." The union amended the grievance in April 2003 to allege a termination for unjust cause.

The union requested that the grievance be sent to arbitration because the termination violated Article VI of the Collective Bargaining Agreement ("CBA"), which provides that the employer may discharge and discipline employees for just cause. Article XXI states that an unsuccessful grievance that involves an alleged violation of a specific provision of the CBA must be submitted to arbitration.[1]

Exxon denied arbitration, contending that Salinas was not discharged pursuant to Article VI but instead received a disability separation necessary to receive long-term disability benefits. The union then sued to enforce the arbitration provision of the CBA.

The district court compelled arbitration, reasoning that on its face the claim that the termination was not for just cause is arbitrable. The court added that there was no evidence supporting Exxon's characterization of Salinas's discharge as a challenge to a disability determination, such as evidence that she had received a disability separation.

Exxon appeals, contending that the district court erred by (1) applying the "rational mind" standard of procedural arbitrability and (2) ignoring "most forceful evidence" that the parties did not intend disability determinations to be subject to the arbitration provision of the CBA (*e.g.* ignoring evidence with respect to arbitrability from the renegotiation of the Disability Plan and ignoring the fact that the Side Agreement with respect to Salinas superseded the CBA and did not provide for arbitration).

II.

We review *de novo* an order compelling

---

[1](...continued)
   When the decision of the appropriate Manager on any grievance appealed to him/her under the provisions of Article XX is not satisfactory to the Union and when such grievance *involves an alleged violation of a specific provision of this Agreement* by the Company, then upon written demand by the Union, the dispute will be referred, within 30 days following the decision of the Manager or his/her designated representatives, to arbitration . . . .

(Emphasis added.)

arbitration. *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distrib., Inc.*, 331 F.3d 485, 487 (5th Cir. 2003). Therefore, we need not discuss Exxon's first issue on appeal, which is that the district court used the "rational mind standard" of procedural arbitrability instead of the standard for substantive arbitrability.[2]

"The courts' role is very limited when deciding issues of arbitrability." *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 343 (5th Cir. 1987). The court's function is to decide whether the claim asserted is the type of claim the parties have agreed to arbitrate. *Id.* In no way are the courts to consider the merits of a claim. *Id.* Rather, the court "is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960).

---

[2] Exxon's argument also fails because the district court did apply the correct legal standard when it stated that the test for whether the dispute was arbitrable was whether the arbitration clause in the agreement was "'susceptible of an interpretation that covers the asserted dispute,'" citing language directly on point from *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960), an opinion dealing with substantive arbitrability. In *Warrior & Gulf* the Court held that arbitration should not be denied unless it can be said with "positive assurance" that the arbitration clause does not cover the dispute. Thus, the district court cited the correct legal standard, and there is no indication that when it used the words "rational mind" later in its analysis, it was referring to the procedural arbitrability test rather than to the fact that it was rational/logical that the dispute at issue was "susceptible" of an interpretation that the dispute was covered by the arbitration clause.

An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf*, 363 U.S. at 582-83. Doubts should be resolved in favor of coverage. *Id.* That presumption is successfully rebutted only if the party resisting arbitration shows either (1) the existence of an express provision excluding the grievance from arbitration or (2) the "most forceful evidence" of a purpose to exclude the claim from arbitration. *Commc'ns Workers of Am. v. Southwestern Bell Tel. Co.*, 415 F.2d 35 (5th Cir. 1969).

A.

With respect to its second issue on appeal, Exxon relies on *Pac. Northwest Bell Tel. Co. v. Commc'ns Workers of Am.*, 310 F.2d 244 (9th Cir. 1962), to argue that evidence of bargaining history can be "most forceful evidence" that a particular dispute is not arbitrable. In this circuit, however, evidence of bargaining experience can be introduced only where the contract language is *ambiguous* as to arbitrability:

> Accordingly, in this circuit the courts must construe the 'language of the contract as finally agreed upon . . . in accordance with ordinary rules of construction *without reference to the give and take of the bargaining sessions* which produced the final terminology. Otherwise we would abandon completely the parol evidence rule when dealing with this type of contract.' *NLRB v. Gulf Atl. Warehouse Co.* . . . . Only where the contract claim and its relationship to the written contract *is vague or unclear* is such an inquiry permissible, and then not to alter or vary the plain meaning of the contract but merely to understand

the exact setting in which it was consummated.

*Southwestern Bell*, 415 F.2d at 40-41 (emphases added).

In *Southwestern Bell*, we expressly referred to—and implicitly rejected—*Pacific Northwest Bell* inasmuch as it states that "[t]he very nature of a collective bargaining agreement requires that it be read in the light of bargaining history." We noted that "the courts must construe the 'language of the contract as finally agreed upon . . . without reference to the give and take of the bargaining sessions" and held that bargaining evidence cannot be introduced when there is no doubt that the arbitration clause covers the dispute at issue.[3]

In *Southwestern Bell*, we further explained that the union's claim that operation of the retirement provisions of the Company's Employee Benefit Plan infringed seniority rights protected by the CBA was a "claim which on its face is governed by the contract," and which obviously raised questions regarding the interpretation and application of a contract provision. *Id*. Additionally, we rejected the employer's argument "that it is but a 'subterfuge' to characterize the Union's claim as arising under the seniority provisions of the contract, the claim actually being one under the Employee Benefit Plan, and thus non-arbitrable unless

---

[3] The decision in *Int'l Ass'n of Machinists v. Fansteel*, 900 F.2d 1005 (7th Cir. 1990) (noting that "[e]ven when the arbitration clause facially applies to the present dispute, that does not end our inquiry"), on which Exxon relies in its reply brief, is also distinguishable for the same reasons: In this court, the inquiry ends if "the contract claim and its relationship to the written contract" are not vague or unclear. *Southwestern Bell*, 415 F.2d at 40.

specifically designated." *Id.* at 39-40. We noted that though "the Plan and its application certainly are incidentally involved in this dispute, the Union's claim is not predicated upon any denial of rights provided under the Plan, but rather *upon the alleged infringement of contract rights by its operation*," which was, "unquestionably" an arbitrable issue. *Id.* at 40 (emphasis added).

The union's claim that Salinas's termination was for unjust cause is a claim that is arbitrable on its face because it requires interpretation of the CBA (Article VI, providing that an employee can be discharged for just cause). Also, as in *Southwestern Bell*, although the claim may implicate a Benefit Plan, it is not a "disguised" Benefit Plan claim, because the union's claim "is not predicated upon any denial of rights provided under the Plan." Rather, it is premised on the alleged infringement of contract rights—either by the Plan's operation or by discrimination (if the Plan was used as a pretext to discharge Salinas).

In other words, Salinas is claiming that her termination was not for "just cause;" she is not asserting that it was unwarranted under the Disability Plan. Therefore, her dispute is unambiguously arbitrable on its face, and evidence of bargaining history cannot be introduced.

### B.

Exxon nonetheless argues that, for two reasons, we should not rely on *Southwestern Bell*. First, it claims that *Southwestern Bell* was overruled by *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). This argument is tenuous.

The majority opinion in that case, written by Justice White for a unanimous court, did

not address whether bargaining history can be most forceful evidence of an intent to exclude a dispute from arbitration. The issue instead was whether the court or the arbitrator should decide whether the dispute over the layoff provision was arbitrable. The court of appeals had held that whether the dispute over the layoff provision was arbitrable was an issue for an arbitrator to decide. The Supreme Court disagreed, explaining that absent an express clause in the contract that provides that arbitrability questions are to be decided by an arbitrator, the arbitrator cannot decide the scope of his own jurisdiction.

Thus, the holding of *AT&T* does not reach the issue of whether evidence of bargaining history can be most forceful evidence of an intent to exclude a dispute from arbitration. Rather, the Court expressly declined to reach the arbitrability issue, because the lower court, which had sent that issue to arbitration, had not ruled on it.[4] Although the three-Justice concur

rence in *AT&T* did indicate that a dispute may not be arbitrable when the party opposing arbitration "adduces 'the most forceful evidence' to this effect from the bargaining history," *id.* at 655, the concurring Justices did not go so far as to declare that extrinsic evidence can be introduced where the contract is unambiguous.

We find no indication in the Supreme Court caselaw cited by Exxon that would allow introduction of "most forceful" extrinsic evidence even if the contract is unambiguous. The decision that introduced the concept of allowing "most forceful evidence" to demonstrate an intent to exclude a dispute from arbitration involved a "vague" (not unambiguous) provision. In that case, the Management Function clause purportedly excluded the dispute at issue from arbitration.[5]

Therefore, the discussion in *Warrior & Gulf* of allowing introduction of extrinsic evidence does not address, at all, the issue of whether such evidence could be introduced when the contract is unambiguous. Unlike in *Warrior & Gulf*, there is no ambiguity in this case.

Nor is there any clause in the CBA, vague

---

[4] *AT&T*, 475 U.S. at 651 (explaining that "it is usually not our function in the first instance to construe collective-bargaining contracts and arbitration clauses"). Exxon argues in a similar vein as follows:

> *In AT&T Technologies*, the Supreme Court did not adopt the parole-evidence rule for use in "most forceful evidence" cases. Rather, the Court fashioned a standard that permits only one kind of evidence (i.e., evidence establishing a purpose to exclude a particular kind of dispute from arbitration) and requires that the proponent offering such evidence satisfy a high threshold (i.e., "most forceful" evidence). Consequently, cases such as *Southwestern Bell*, which conflict with and were decided before *AT&T Technologies*, are no longer reliable precedent.

(continued...)

[4](...continued)
Because the majority in *AT&T* only actually decided that the arbitrability question should be resolved by the court, not the arbitrator, and refused to reach the standard the court should apply with respect to bargaining history or other extrinsic evidence, Exxon's argument is unpersuasive.

[5] *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585 (1960) ("[W]e think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is *vague* and the arbitration clause quite broad.") (emphasis added).

5

or otherwise, that would introduce any doubt as to whether disputes allegedly violating Article VI are arbitrable. Exxon rejected the union's arbitration demand on the ground that arbitration of a claim with respect to Salinas's termination would violate Article XVII(A) of the CBA, which provides that the CBA does not affect the eligibility of employees to participate in the Benefit Plans (including the disability plan).[6] If this argument were correct, Article XVII(A) would qualify as an express provision in the CBA excluding certain types of grievances from arbitration and could render this dispute non-arbitrable.

But this reasoning is illogical: By its terms, the union could never arbitrate a discharge, such as a discharge for racial or other discrimination, because reinstatement of a discharged employee would make him again qualify for benefits, which would "of necessity" affect his eligibility to participate in the Benefit Plan. This would in effect nullify Article VI.

Furthermore, Article XVII(A) does not mention arbitration. It is unlike the exclusionary clause at issue in *Southwestern Bell*, which expressly excluded claims relating to Benefit Plans from arbitration. It is also unlike the Management Function clause in *Warrior & Gulf*.

Last, as we explained in *Southwestern Bell*, the Court in *Warrior & Gulf* declined to address the issue of whether bargaining evidence could ever be admissible to show whether an issue was excluded from arbitration:

Though some disagreement exists among the circuits on the admissibility of evidence of bargaining history to show whether an issue was excluded from arbitration . . ., the rule in this circuit has been clear since the Supreme Court's opinion in [*Warrior & Gulf*], where the majority, faced with having to determine whether an exclusionary clause prevented arbitration of a subcontracting grievance, refused even to mention bargaining history that showed repeated unsuccessful attempts by the Union to secure contractual restrictions on subcontracting.

*Southwestern Bell*, 415 F.2d at 40 (citations omitted). Therefore, unless and until the Supreme Court addresses the issue of whether bargaining history is admissible to modify the terms of an unambiguous contract, *Southwestern Bell* is good and binding law in this court.[7]

---

[6] *See* Jones Decl. at ¶ 5 ("I explained that the relief requested by Ms. Salinas (*i.e.*, reinstatement to her job and restoration of all benefits) would of necessity "affect [her] eligibility . . . for participation in the Companies' Benefit Plans," which would violate Article XVII(A).").

---

[7] The decision in *Int'l Union of Operating Eng'rs, Local 279 v. Sid Richardson Carbon Co.*, 471 F.2d 1175, 1178 (5th Cir. 1973), which Exxon relies on, could not have overruled *Southwestern Bell*, because of our rule that a panel decision binds later panels. In any event, that case dealt with a situation in which there was "doubt" as to whether the arbitration clause covered the dispute, so introduction of bargaining history was permissible under *Southwestern Bell*:

But even a standard of arguable arbitrability which favors arbitration in the *doubtful* case . . . cannot justify our construing an arbitration clause of limited scope into one which vests arbitration of representation questions. Especially is this true where the bargaining history so clearly refutes an intent to arbitrate representation questions.

*Id.* at 1177-78 (emphasis added, footnote and citations omitted).

## C.

The second argument Exxon makes in its attempt to minimize the precedential effect of *Southwestern Bell* is even more far-fetched than is its reliance on the concurrence in *AT&T*. Exxon contends that

the Fifth Circuit characterized *Southwestern Bell*'s limited exception to the parole-evidence rule as dictum, and rejected the company's arbitrability argument, in part, because it offered "no extrinsic evidence *such as bargaining history*" to support its interpretation. *IBEW v. Western Electric Co.*, 661 F.2d 514, 516, n.4 [(Former 5th Cir. Nov. 1981)].

(Emphasis added.)

But, as is evident from a reading of *Southwestern Bell*, the *dictum* there regards the *permission* to introduce bargaining evidence when the contract is *ambiguous*, not the *prohibition* to introduce such evidence when the contract is *unambiguous*:

Only where the contract claim and its relationship to the written contract is [*sic*] vague or unclear is such an inquiry [into bargaining history] permissible, and then not to alter or vary the plain meaning of the contract but merely to understand the exact setting in which it was consummated. . . . But this narrow exception to the general rule of exclusion *is not operative here*, where both the nature of the Union's claim and the meaning of the collective agreement *are evident* . . . .

*Southwestern Bell*, 415 F.2d at 40–41 (footnote omitted).

This court in *Southwestern Bell* had in fact

actually held that evidence of bargaining history is not admissible where the contract is unambiguous, which is precisely the issue here. Therefore this could not have been *dictum* regardless of how we described it in *Western Electric*.[8] Accordingly, Exxon's attempt, at oral argument and in its reply brief, to characterize *Southwestern Bell* as inapposite is misguided.

Furthermore, in *Western Electric* we did not address *Southwestern Bell*'s holding, but only its *dictum* that allowed introduction of bargaining evidence when the contract was "ambiguous." In *Western Electric*, the employer conceded that the dispute over each of the forty employees' classifications was arbitrable, yet the employer contended that the use of the term "an employee" manifested an intent to submit to arbitration only issues involving one employee at a time, not an intent to submit to "group arbitration." We explained that the contract did not unambiguously provide the interpretation that the employer suggested; we stated that if the company intended the words "an employee" to have such an effect, "it had to make its understanding much clearer than this." *Western Elec.*, 661 F.2d at 516-17.

Therefore, there was an ambiguity as to the effect of the term "an employee." We then noted that although the *dictum* in *Southwestern Bell* allows introduction of evidence of

---

[8] *See Southwestern Bell*, 415 F.2d at 40–41 ("As a final argument, Southwestern Bell contends that the question of the arbitrability of this dispute should not be determined without the benefit of evidence revealing the bargaining history surrounding the inclusion of Article VII in the contract . . . . Relying upon two prior Fifth Circuit decisions, the District Court refused the proffer. We are in accord with this determination.").

bargaining history when the contract is "ambiguous," the employer in that case did not introduce any such evidence. *Id.* at 516. Thus, absent any extrinsic evidence against arbitration, and given the presumption in favor of arbitrability, we resolved the doubt in favor of arbitration.

*Western Electric* is thus inapposite not only because it did not reject *Southwestern Bell*, but also because, as in the *Southwestern Bell dictum*, it allowed introduction of bargaining history and other extrinsic evidence where the contract was ambiguous. In contrast, the contract here *unambiguously* covers disputes relating to the interpretation of the "just cause" discharge provision of the CBA.

Last, Exxon argues that *NLRB v. L.B. Priester & Son, Inc.*, 669 F.2d 355 (5th Cir. 1982), also supports its argument in favor of allowing the introduction of bargaining evidence. That decision, however, is not inconsistent with either the holding or the *dictum* in *Southwestern Bell*. In that case, as Exxon admits, we "upheld the NLRB's affirmation of an ALJ's reliance on extrinsic evidence to shed light on an *ambiguous* CBA provision." Exxon Reply Br. at 2 (emphasis added). Again, unlike the contract in this case, the contract there was "ambiguous," so introduction of bargaining evidence was permissible under the *dictum* in *Southwestern Bell*. Most importantly, that case did not address whether the introduction of bargaining history would be permissible if the contract were not ambiguous.

### D.

Other courts, as well, have held that unless the CBA provides instances of what constitutes "just cause" and expressly provides that discharges based on those instances are not arbitrable, the question whether an employee was discharged for just cause is arbitrable. Where the CBA prohibits discharge of regular employees "'except for just cause,' and does not define 'just cause,'" and "where the CBA authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms, it remains for the arbitrator to determine whether a discharge was for 'just cause.'" *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 896-97 (2d Cir. 1997). If the employer "wished to have an unquestionable right to discharge an employee for any specified conduct, it needed to negotiate for recognition of that right in the CBA." *Id.* at 896.[9]

Similarly in this case, if Exxon wished to

---

[9] In *Local 453, Int'l Union of Elec., Radio & Mach. Workers v. Otis Elevator Co.*, 314 F.2d 25, 28 (2d Cir. 1963) (Marshall, J.), the court explained that where the question submitted in a grievance has a broad scope, framed only in terms of "just cause," the dispute is arbitrable:

> The agreement nowhere defines what conduct constitutes "just cause" for discharge or what criteria shall govern the 'propriety' of a discharge. That the parties intended to leave such definition to the arbitrator is made plain both by the "plenary grant" of power made to him . . . and by *the broad scope of the stipulated question*, framed only in terms of "just cause," which accompanied the submission. Although the scope of an arbitrator's authority is not unlimited, . . . the terms of the contract and of the submission in the present case, underscored by the rule that courts must uphold the arbitrator in the exercise of the broadest jurisdiction in the absence of specific contractual limitations on that jurisdiction, clearly bespeak arbitrability.

(Emphasis added, citations omitted.)

have an unquestionable right not to submit to arbitration discharges that allege "unjust cause" but touch matters relating to a disability termination, it could have provided that (1) a long-term disability termination constitutes a discharge for just cause and (2) discharges that are made for a reason that is defined as "just cause" are not arbitrable.[10] Exxon is free to argue to the arbitrator that the disability was the cause, not the pretext, of the termination and that Salinas's termination was for just cause.

### III.

Even if bargaining evidence were admissible, the bargaining evidence in this case is not most forceful evidence showing a purpose to exclude this dispute from arbitration. The bargaining history refers to the employer's refusal to arbitrate disability decisions and benefit levels under the Plan. But the union is making a "disability discrimination" argument for the discharge, which is not a claim of whether the Benefit Plan was applied correctly, but whether the company discriminated against Salinas because of her disability. The March grievance specifically alleges a discharge based on a "disability discrimination" and alleging violation, among others, of Articles II (discrimination) and VI (just cause discharge). The April

---

[10] *See also Irving Materials, Inc. v. Local 716*, 779 F. Supp. 968, 975 & n.12 (S.D. Ind. 1992):

Parties may limit an arbitrator's authority by expressly removing the just cause determination from his scope of authority, *see Int'l Bhd. of Elec. Workers v. Sawnee Elec. Membership Corp.*, 862 F.2d 1534, 1536 (11th Cir. 1989), or by enumerating the specific items that will constitute just cause. *See Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 601 (5th Cir. 1989) . . . . Neither limitation is present in the Agreement here.

amended grievance alleges a violation of the just cause termination provision.

Thus, even if the bargaining history had proved that the parties did not intend disability determinations to be arbitrable,[11] and assuming *arguendo* that there was evidence in the record showing that Salinas received a disability termination, a claim that the company discriminated against an employee and unjustly terminated him because of his disability is, as we

---

[11] We disagree with Exxon that the bargaining history it presented is most forceful evidence of an intent to exclude this type of dispute from arbitration. The bargaining history would not even satisfy the test of *Pacific Northwest Bell,* the main case on which Exxon relies (and which, as explained, this court rejected). *Pacific Northwest Bell* is distinguishable because it dealt with evidence relating to bargaining for the CBA, and in particular with bargaining with respect to the arbitration clause of the CBA. In contrast, here the evidence is related to bargaining for a different contract, the Benefit Plan.

In particular, the bargaining for the Benefit Plan occurred many years after the arbitration and the "just cause" clauses of the CBA were adopted. Although it may be possible for a later contract like the Benefit Plan to supersede the CBA with respect to the arbitration issue, it would be a stretch to argue that a later contract supersedes an earlier contract with respect to a particular issue, absent an express provision in the later contract relating to that issue.

Exxon's argument that it was the union's burden to amend the CBA to provide for arbitration of disputes such as that in this case is therefore misplaced. Because the arbitration clause of the CBA facially covers such disputes, it was Exxon's burden to negotiate for a provision, preferably in the CBA (but also possibly elsewhere), that instead would provide that such disputes are not arbitrable.

explained in *Southwestern Bell*, only "incidentally" related to a disability determination.

Although the disability determination, if correct, will help the arbitrator in deciding the merits of the "unjust termination" claim, it is not at the heart of a discrimination/"unjust cause" termination grievance, which is predicated on the motives of the company in making that decision. That is, merely because Exxon asserts a defense based on a non-arbitrable issue does not render non-arbitrable a claim that was arbitrable when asserted.[12]

Further, if the court were to decide the frivolousness of the defense in deciding arbitrability (*e.g.* was the disability determination a "pretext" or was it correct), the court in effect would be deciding the merits of the case; as we have explained, this is not permitted, because the parties have reserved the merits of the case to the arbitrator.

In sum, the bargaining history does not present any evidence that disputes alleging unjust termination (rather than contesting a disability termination) are non-arbitrable just because the employee was disabled. Exxon presented no evidence of bargaining history or an express contractual provision showing that the parties wished to exclude from arbitration claims related to discrimination discharges.

IV.

Exxon claims that the Side Agreement with

---

[12] Otherwise parties could always attempt to assert questionable or frivolous non-arbitrable defenses to escape arbitration and engage in forum shopping. A company accused of discrimination based on disability cannot use the "disability determination" pretext to insulate itself from an arbitration of a claim for unjust termination.

respect to Salinas superseded the CBA and, because it does not provide for arbitration, this dispute is not arbitrable. But this argument fails precisely because the Side Agreement is silent with respect to arbitration. That is, that agreement does not provide that any grievance that Salinas may file related to a possible future discharge cannot be submitted to arbitration. If Exxon intended that the Side Agreement supersede the CBA with respect to the arbitration issue, it could have provided for that expressly.

Our decision in *Int'l Union of Operating Eng'rs, Local 351 v. Cooper Natural Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999), and the other cases on which Exxon relies, are distinguishable because in those cases, the later-in-time last chance agreements (LCA's) were not silent as to the issue on which they allegedly superseded the CBA. Under the CBA, a drug offense did not automatically result in a discharge. In contrast, the LCA's expressly included clauses that reduced the benefits awarded by the CBA, providing that any future similar offenses (usually drug offenses) would automatically result in discharge. In contrast, the Side Agreement does not provide that Salinas may be discharged at any time without any recourse to arbitration.

Further, the Side Agreement does not even provide that Salinas can be discharged (with or without arbitration) if her medical restrictions will prohibit her from meeting her obligations as a Senior Administrative Assistant. Instead, it states only that in that circumstance "she will be medically evaluated and her restrictions reviewed."

"Reviewed" does not mean "automatically discharged." It does not exclude a possibility that Salinas could be transferred to a less "sen-

ior" position in the Clerical Unit, because, as the Side Agreement recognizes, Salinas passed the "Staff Support Test and is qualified to work" in that unit. Therefore, there is no indication in the Side Agreement that Salinas would be automatically discharged if her condition worsened and she were medically evaluated.[13]

In any event, the issue of whether the discharge was appropriate was still arbitrable in the cases on which Exxon relies. In those cases, the court merely reviewed the arbitral award and held that the arbitrator could not fashion "other relief" if the LCA provided that, in case of a discharge for a drug offense, there will be

no reinstatement. *Cooper*, 163 F.3d at 919. Those courts did not state that a discharge for a future drug offense will be non-arbitrable.

AFFIRMED.

---

[13] Further, Exxon does not point to any evidence that Salinas was even "medically evaluated" before her discharge in early 2003. Jones only declared that "by early 2003, when this dispute arose, Elizabeth Salinas . . . had been determined to be 'incapacitated' pursuant to the plan." Jones does not explain whether the determination that Salinas was incapacitated for the purposes of performing a job in the Clerical Unit was based on a medical evaluation. Nor does Exxon indicate that there was a "review" of Salinas's restrictions in 2003 and that because of her medical restrictions, she was deemed unable to perform *any* job for which she was qualified in the Clerical Unit.

Although Exxon pointed out at oral argument that the union's representative was instructed at a deposition not to answer the question whether Salinas was medically evaluated before her discharge in early 2003, the union does not bear the burden to prove Exxon's defense to arbitrability. Exxon has access to information regarding Salinas's medical evaluation and the review of her restrictions (because it performed the review itself if there was such a review). Therefore, Exxon cannot say that this evidence is not available on account of someone else's failure to bring it forth.