REVISED DECEMBER 2, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-60567

STEPHEN L SHERER

Plaintiff - Appellee

v.

GREEN TREE SERVICING LLC

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson

Before KING, HIGGINBOTHAM, and WIENER, Circuit Judges.

PER CURIAM:

Green Tree Servicing LLC appeals the district court's denial of a motion to compel the arbitration of Stephen Sherer's Fair Debt Collection Practices Act and Fair Credit Reporting Act claims. Scherer is a party to a loan agreement that underlies his statutory claims. Green Tree Servicing LLC is not a party to that loan agreement. Nevertheless, the broad language of that agreement's arbitration clause requires arbitration in this case. For the following reasons, we reverse the district court's order and remand for entry of an order compelling arbitration.

I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 2, 2002, Stephen Sherer executed a Manufactured Home Promissory Note, Security Agreement and Disclosure Statement (the "Loan Agreement") with Conseco Bank, Inc. The Loan Agreement's arbitration clause states that "[a]ll disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result from this Agreement . . . shall be resolved by binding arbitration."

Green Tree Servicing LLC ("Green Tree") subsequently obtained the servicing rights to Sherer's loan. Before the loan was due, Sherer paid the balance of his debt. Then, Green Tree allegedly charged Sherer a prepayment penalty that was contrary to the terms of the Loan Agreement, attempted to collect that prepayment penalty and interest thereon, and reported Sherer's failure to pay the penalty to various credit reporting agencies. Based on these facts, Sherer sued Green Tree in the United States District Court for the Southern District of Mississippi under both the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). In response, Green Tree filed a motion to dismiss and compel arbitration, which the district court denied based on its holding that equitable estoppel did not apply. Green Tree filed timely notice of appeal.

## II. DISCUSSION

### A. Overview Of Our Arbitration Clause Analysis

We review de novo a district court's denial of a motion to compel arbitration. JP Morgan Chase & Co. v. Conegie, 492 F.3d 596, 598 (5th Cir. 2007).

A two-step analysis is applied to determine whether a party may be compelled to arbitrate. Id. First, we ask if the party has agreed to arbitrate the dispute. See id. ("The Court must first ascertain whether the parties agreed to arbitrate the dispute."). If so, we then ask if "any federal statute or policy renders the claims nonarbitrable." Id. (quoting Wash. Mut. Fin. Group, LLC v.

Bailey, 364 F.3d 260, 263 (5th Cir. 2004)). As neither party argues that a federal statute or policy would bar arbitration here, the issue before us is limited to the analysis's first step.

That first step itself contains two questions: (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement. See id. We apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists. Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073–74 & n.5 (5th Cir. 2002); see Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir. 2002) ("[W]e will read the reach of an arbitration agreement between parties broadly, but that is a different matter from the question of who may invoke its protections.").[1] Because the district court held, and neither party challenges, that the claims would otherwise be within the scope of the arbitration clause "[h]ad the defendant signed the contract," the present case turns solely on the first question of whether a valid agreement exists. Put another way, we are asked to determine whether Sherer has agreed to arbitration with a nonsignatory, such as Green Tree.

B.      Is There A Valid Agreement To Arbitrate

"Who is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement." Bridas

---

[1] As authority for the proposition that only a signatory to an arbitration agreement can enforce it, Sherer points to the following introductory sentence in Westmoreland: "[i]t is then not surprising that to be enforceable, an arbitration clause must be in writing and signed by the party invoking it." 299 F.3d at 465. Sherer neglects to acknowledge, however, that the balance of the opinion in Westmoreland addresses the exceptions to that proposition, focusing primarily on the availability of equitable estoppel (in the absence of language in the arbitration clause similar to the language at issue here). See id. at 467 (applying the equitable estoppel standard that we set out in Hill v. G E Power Systems, Inc., 282 F.3d 343, 348–49 (5th Cir. 2002), and concluding that, under the particular circumstances of the case, the nonsignatory could not compel arbitration).

S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 355 (5th Cir. 2003). When the agreement's terms do not expressly state whether a signatory may be compelled to arbitrate with a nonsignatory, we have drawn on various theories of contract and agency law, including equitable estoppel,[2] to determine a nonsignatory's rights and duties under an arbitration clause. See id. at 356 ("Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."). Here, although the district court held that it must apply equitable estoppel to determine whether Green Tree may compel arbitration, we do not need to apply such a theory because the terms of the Loan Agreement clearly identify when Sherer may be compelled to arbitrate with a nonsignatory.

According to the broad terms of the Loan Agreement, Sherer has agreed to arbitrate any claims arising from "the relationships which result from th[e] [a]greement." A loan servicer, such as Green Tree, is just such a "relationship." Indeed, without the Loan Agreement, there would be no loan for Green Tree to service, and no party argues to the contrary. Sherer's FDCPA and FCRA claims arise from Green Tree's conduct as Sherer's loan servicer and, therefore, fall within the terms of the Loan Agreement's arbitration clause. Based on the Loan Agreement's language, Sherer has validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree, and the language is sufficiently broad to permit Green Tree to compel arbitration.

We are supported in this conclusion by the Eleventh Circuit's decision in Blinco v. Green Tree Servicing LLC, 400 F.3d 1308 (11th Cir. 2005). There, the Eleventh Circuit interpreted the same arbitration clause language in a statutory claim against the same loan servicer. Id. at 1310. The court first held that a

---

[2] The other five theories we have considered are (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter ego, and (5) third-party beneficiary. Id. at 356.

lawsuit against a loan servicer was a claim arising from a relationship that resulted from the agreement. Id. at 1311 ("Indeed, it is difficult to understand how Green Tree could be a servicer if there were no [n]ote, and more importantly, how Green Tree could face statutory servicer liability if there were no [n]ote to service."). Then, the court held that Green Tree could compel arbitration because "[t]he scope of the [n]ote's arbitration clause is sufficiently broad to allow non-signatories to invoke the clause where, as here, they face claims derived from the [n]ote." Id. at 1312.

Sherer argues that our precedent requires us to apply a theory such as equitable estoppel in order to determine whether a nonsignatory may compel arbitration and that we cannot, therefore, consider the terms of the agreement. The district court agreed with this argument and felt bound to apply the equitable estoppel rubric that we established in Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524 (5th Cir. 2000). But that approach skips the first step in determining whether a valid agreement to arbitrate exists: the "terms of the agreement" dictate "[w]ho is actually bound by an arbitration agreement." See Bridas, 345 F.3d at 355. If that fails, then we look to theories such as equitable estoppel to determine whether a nonsignatory may compel arbitration. See id. at 356. None of the agreements that we have considered in our opinions involving nonsignatories expressly addressed whether a nonsignatory may compel a signatory to arbitrate a claim; as a result, we frequently relied on theories such as equitable estoppel to determine whether the nonsignatory may

5

invoke arbitration.[3] The frequency of that reliance, however, does not make the rule.

Sherer further argues that the Eleventh Circuit has undermined its holding in Blinco with its opinion in Becker v. Davis, 491 F.3d 1292 (11th Cir. 2007). Contrary to Sherer's assertion, Becker did not affect the pertinent part of Blinco's reasoning. Instead, Becker referred to the portion of Blinco that addressed when a nonsignatory may be compelled to arbitrate. Blinco involved a promissory note signed only by a husband, and the court addressed the additional issue concerning whether the nonsignatory wife may be compelled to arbitrate her claims. 400 F.3d at 1310. The court applied equitable estoppel in order to compel the wife to arbitrate because the terms of the agreement did not address when a nonsignatory could be compelled to arbitrate (as opposed to when a nonsignatory could compel arbitration). See id. at 1312. Because Becker involved a plaintiff suing in her individual capacity for violations of an agreement that she signed in her capacity as a trustee, the Eleventh Circuit applied that portion of Blinco that addressed equitable estoppel in order to determine whether the nonsignatory may be compelled to arbitrate her claims where the agreement was silent on the matter. See Becker, 491 F.3d at 1296, 1299–1300.

---

[3] See, e.g., id. at 351–52 ("The relevant part of . . . the agreement stipulates that '[a]ny dispute, controversy or claim arising out of or in relation to or in connection with th[e] [a]greement . . . shall be exclusively and finally settled by arbitration, and any Party may submit such a dispute, controversy or claim to arbitration.'" (alterations and omissions in original)); Hill, 282 F.3d at 345–46 (noting that the defendant seeking to compel arbitration was not a party to the agreement in question and that the agreement required the signatory parties "to submit any claims arising out of [the agreement] to arbitration"); Grigson, 210 F.3d at 525–27 (stating that the parties to the distribution agreement for the movie "Return of the Texas Chain Saw Massacre" agreed to arbitrate, inter alia, "all other causes of action (whether sounding in contract or in tort) arising out of or relating to this [a]greement"); Brief for Appellee at 7, Westmoreland, 299 F.3d 462 (No. 01-20793) ("[T]he parties hereby agree to . . . binding international arbitration in Paris, France.").

Here, the language of the Loan Agreement demonstrates that Sherer has agreed to arbitrate his claims that arise against nonsignatories whose "relationships . . . result from th[e] [a]greement." Sherer is bound by the language of the Loan Agreement, and Green Tree, as a nonsignatory whose relationship resulted from the Loan Agreement, may therefore compel Sherer to arbitrate his claims.[4]

## III. CONCLUSION

For the foregoing reasons, we REVERSE the order of the district court and REMAND with instructions to grant the motion to compel arbitration.

---

[4] We need not and do not address the district court's holding on the availability of equitable estoppel.