Mayra MENDEZ, Plaintiff,

v.

NEW BELL GENERAL SERVICES, L.P., Vista Hills Health Care Center, GP, LLC, Vista Hills Health Care Center, L.P., Sylvia Roldan, and Santiago Reyes, Defendants.

No. EP–10–CA–127–FM.

United States District Court, W.D. Texas, El Paso Division.

July 30, 2010.

Daniela Labinoti, Law Firm of Daniela Labinoti, P.C., El Paso, TX, for Plaintiff.

Bruce A. Griggs, Courtney M. Smith, Ogletree Deakins Nash Smoak & Stewart PC, Austin, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING MAYRA MENDEZ'S MOTION FOR SANCTIONS

FRANK MONTALVO, District Judge.

On this day, the Court considered New Bell General Services, L.P. and Vista Hills Health Care Center, GP, LLC's ("Vista Hills") (collectively, "Defendants") "Defendants' Motion to Compel Arbitration" [Rec. No. 8], filed May 25, 2010, in which

Defendants request the Court to compel arbitration of Mayra Mendez's ("Mendez") negligence claims pursuant to an Occupational Injury Benefit Plan ("Plan") Mendez entered upon commencing her employment with Vista Hills and to stay her Employee Retirement Income Security Act ("ERISA") claims. Mendez filed "Plaintiff's Response to Defendants' Motion to Compel Arbitration and Motion for Sanctions" [Rec. No. 9] on June 8, 2010. On June 15, 2010, Defendants filed "Defendants' Reply to Plaintiff's Response to Defendants' Motion to Compel Arbitration and Opposition to Motion for Sanctions" [Rec. No. 10]. Based on the parties' briefs, arguments, and the applicable law, the Court will grant Defendant's Motion to Compel Arbitration, stay this case, and deny Mendez's motion for sanctions.

## I. *PARTIES' ARGUMENTS*

Defendants argue this case is subject to arbitration under the Federal Arbitration Act ("FAA") because Mendez, an at-will employee of Vista Hills, entered a binding agreement to arbitrate any disputes related to her on-the job injury. Defendants assert Vista Hills's business involves interstate commerce. Defendants contend Mendez's negligence claims fall within the scope of the arbitration agreement, and any doubts concerning whether the claims fall within the scope of the arbitration agreement should be resolved in favor of arbitration. Defendants argue any attack on the substance of the contract must be decided in arbitration, and unequal bargaining power is insufficient to negate the validity of the arbitration agreement.

Mendez contends arbitration is inappropriate because the arbitration agreement is illusory. Mendez asserts the arbitration agreement reserves to Defendants the unilateral right to modify the Plan at any time, and therefore, the arbitration agreement is illusory. Mendez argues Defendants waived their right to arbitration by attempting to resolve the dispute through litigation. Mendez requests the Court to sanction Defendants on the basis that Defendants acted in bad faith in removing the case to federal district court and then requesting the Court to stay adjudication of the federal question and compel arbitration of the state law negligence claims.

In reply, Defendants contend their removal of the case to federal district court did not waive their rights to arbitrate Mendez's claims. Defendants argue that no authority supports that removal results in the waiver of the right to arbitrate. Defendants assert they moved to compel arbitration at the earliest opportunity. Defendants contend the arbitration agreement is not illusory because the reservation of the right to amend, modify, or terminate the Plan does not apply to the arbitration agreement, as the arbitration agreement is independent of the Plan, and the arbitration agreement is included in the Plan only for ease of documentation. As for Mendez's request for sanctions, Defendants assert Mendez has not complied with the Federal Rule of Civil Procedure 11 ("Rule 11") requirements for sanctions and contend Defendants have undertaken no sanctionable conduct.

## II. *APPLICABLE LAW*

The FAA provides:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds

as exist at law or in equity for the revocation of any contract.[1]

The FAA defines "commerce" as

commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.[2]

A party may request to stay a pending lawsuit when an issue referable to arbitration pursuant to a valid arbitration agreement comprises part of the lawsuit, so long as the party requesting the stay has complied with the procedure for arbitration.[3]

■■■ To determine if a party may be compelled to arbitrate pursuant to the FAA the Court must employ a two-step review.[4] First, the Court must review whether a party has agreed to arbitrate a dispute.[5] At this first step, the Court's inquiry is two-fold. The Court must first determine if there is a valid arbitration agreement.[6] "That determination is generally made on the basis of ordinary state-law principles that govern the formation of contracts."[7] The Court must second determine if the issues in dispute "fall within

the scope of that arbitration agreement."[8] "The second question of scope ... is answered by applying the federal substantive law of arbitrability."[9] The Court applies the federal policy favoring arbitration if there are ambiguities concerning the scope of such an agreement.[10] The policy favoring arbitration, however, does not apply to the determination of the validity of the arbitration agreement in the first place.[11]

■■■ After the Court finds the parties have agreed to arbitrate, the Court must then review whether a federal statute or policy "renders the claims nonarbitrable."[12] Only transportation workers' employment contracts, as enumerated by the FAA, are exempted from the FAA.[13]

### III. DISCUSSION

#### A. Defendants Have Not Waived Any Existing Right to Arbitrate Mendez's Claims

■■■ "Waiver of arbitration is not a favored finding, and there is a presumption against it."[14] However, "under appropriate circumstances a waiver of arbitration may be found."[15] The Court may find waiver "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other

1. 9 U.S.C. § 2.

2. § 1.

3. § 3.

4. See Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir.2008) (citation omitted).

5. See id.

6. See id.

7. Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir.2008) (citations and internal quotation marks omitted).

8. Sherer, 548 F.3d at 381.

9. Graves v. BP Am., Inc., 568 F.3d 221, 222–23 (5th Cir.2009) (footnote with citation and internal quotation marks omitted).

10. See Sherer, 548 F.3d at 381 (citations omitted).

11. Id.

12. Id.

13. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 1311, 149 L.Ed.2d 234 (2001).

14. Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 496 (5th Cir.1986).

15. Id. at 497.

party." [16] Hence, "[a] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." [17]

Defendants timely removed this case to federal district court. One day after the Court denied Mendez's motion to remand the case, Defendants filed Defendants' Motion to Compel Arbitration. Mendez has known from the outset that Defendants wanted to arbitrate Mendez's state law negligence claims. Given the heavy presumption against waiver, the Court finds Defendants have not waived any existing right to arbitrate Mendez's claims.

### B. The FAA Applies to the Plan

■ Defendants assert their business is engaged in interstate commerce, as does the Plan's arbitration provision. Mendez does not deny the business is engaged in interstate commerce. As it is undisputed Defendants engage in interstate commerce, the FAA applies to the arbitration agreement at issue here.

### C. The Parties Have Agreed to Arbitrate, and No Federal Law or Policy Renders the Claims Nonarbitrable

### 1. The Parties Have Agreed to Arbitrate

### i. Validity of the Arbitration Agreement

■ The arbitration agreement at issue here is only enforceable if it is valid pursuant to "ordinary state-law principles that govern the formation of contracts." [18] Under Texas law, the Court interprets arbitration agreements pursuant to traditional contract principles.[19] To establish that an arbitration agreement is enforceable, an employer must demonstrate "the agreement meets all requisite contract elements." [20]

The Summary Plan Description ("SPD") at issue here states "[t]he Company has a mandatory company policy requiring that you comply with ... arbitration requirements." The SPD further provides:

This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.... Adequate consideration for this arbitration requirement is represented by, among other things, your eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Company and you. Any actual payment of benefits under this Plan to or with respect to you will serve as further consideration for and represent your further agreement to the provisions of this arbitration requirement. This arbitration requirement will remain in effect with respect to the Company and you even if you refuse benefits under this Plan, you return Plan benefit payments to the Company, you become ineligible for benefits or benefits cease under this Plan in accordance with its terms, or your employment with the Company is voluntarily or involuntarily terminated. **This arbitration provision is not subject to ERISA requirements or otherwise dependent upon the benefits provisions of this Plan in any way, and is included herein strictly as a matter of convenience in documentation.** This Plan and arbitration requirement also in no way

---

**16.** *Id.* (footnote omitted).

**17.** *Id.* (citations and internal quotation marks omitted).

**18.** *Morrison,* 517 F.3d at 254 (citations and internal quotation marks omitted).

**19.** *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227–28 (Tex.2003).

**20.** *Id.* at 228.

changes the "at will" employment status of any participant.

The SPD also contains an "Amendment or Termination of Plan" provision, which provides:

The Company presently intends to continue the Plan indefinitely, but the Company reserves the right to amend, modify, or terminate the Plan at any time. Any such amendment or termination will be adopted pursuant to formal written action of a representative authorized to act on behalf of the Company. No amendment or termination of the Plan will reduce the amount of any benefit then due and payable under the Plan to or with respect to a participant in connection with an injury occurring prior to the date of such amendment or termination.

Mendez signed the "Receipt, Safety, and Arbitration Acknowledgment," acknowledging she read, or had the opportunity to read, the SPD for the Plan and acknowledging the SPD's policy regarding compulsory arbitration of some claims.

Contrary to Defendants' assertion, the arbitration provision is part of the Plan. According to the Oxford English Dictionary ("OED"), "summary" means "[c]ontaining or comprising the chief points or the sum and substance of a matter; compendious (now usually with implication of brevity)." The OED defines "description" as "[t]he action of describing; the result or product of this action." Ascribing words their common meaning, the SPD is a document that describes the sum and substance of the Plan. As such, the arbitration requirement constitutes part of the Plan. The question then is whether the arbitration agreement, as part of the Plan, is valid and enforceable under Texas law in the context of Defendants and Mendez's at-will employment relationship.

 The validity and enforceability of any contract can turn on whether a contract is bilateral or unilateral.[21] Under Texas state law principles, "[a] unilateral contract ... is created by the promisor promising a benefit if the promisee performs."[22] According to Texas law, "[t]he contract becomes enforceable when the promisee performs."[23] "A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both a promisor or promisee."[24] "The mutual promises to give up the right to litigate can ... constitute the consideration supporting the agreement to arbitrate"[25] as "both parties [a]re bound to the promises to arbitrate."[26]

 Under Texas law, however, "[c]onsideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment."[27] This is so as "[s]uch a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance."[28] Hence, "[w]hen illusory promises are all that support a purported bilateral con-

21. *See Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex.2009).

22. *Id.* (citations and internal quotation marks omitted).

23. *Id.* (citations and internal quotation marks omitted).

24. *Id.* (citation and internal quotation marks omitted).

25. *In re Jebbia*, 26 S.W.3d 753, 757 (Tex.App. 2000) (citation omitted).

26. *Webster*, 128 S.W.3d at 228 (citation omitted).

27. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644–45 (Tex.1994) (footnote omitted).

28. *Id.* at 645 (citation omitted).

tract, there is no contract."[29] Nonetheless, even if a promise is illusory at the time it is made, a unilateral, enforceable contract may still be formed by performance, so long as such performance occurs by the time of any purported breach.[30]

In recent years, the Texas Supreme Court, as well as other Texas courts, have reexamined agreements to arbitrate in the at-will employment context.[31] In *In re Halliburton*, an employer notified an at-will employee of its intent to adopt an alternative dispute resolution ("ADR") program.[32] The notice informed the at-will employee that if he continued his employment with the employer after a specified date, his continued employment served as his acceptance of the ADR program.[33] The at-will employee argued the employer's agreement to arbitrate was illusory, and therefore did not constitute consideration for the at-will employee's agreement to arbitrate.[34] The Texas Supreme Court found the ADR "[p]rogram [wa]s not *dependent* on continuing employment [but] ... *accepted* by the employee's continuing employment," concluding the at-will employee accepted the offer by continuing to work after the specified date, thereby binding himself and his employer to arbitrate any disputes.[35] Therefore, "the [ADR p]rogram was not dependent on continuing employment and was not illusory."[36] The Texas Supreme Court further held the agreement to arbitrate was not illusory because the employer could not avoid its promise to arbitrate by amending or terminating the arbitration agreement because any amendment did not apply to a dispute of which the employer had actual notice on the day of amendment and termination of the arbitration agreement would not be effective until ten days after reasonable notice of termination.[37]

In *J.M. Davidson, Inc. v. Webster*, the Texas Supreme Court clarified its holding in *Halliburton*.[38] It explained that the at-will employee's status did not render the agreement to arbitrate illusory because the employer did not rely on continued employment as consideration for the arbitration agreement.[39] Rather, the Texas Supreme Court noted the "mutual promises to submit all employment disputes to arbitration constituted sufficient consideration ... because both parties were bound to the promises to arbitrate."[40] The Texas Supreme Court clarified that the employer's right to modify or terminate the arbitration agreement "did not allow the employer to avoid its promise to arbitrate because it was limited by express contract provisions," including that amendments to the agreement applied only prospectively and that termination required advance notice.[41]

Subsequently in *In re Palm Harbor Homes, Inc.*, the Texas Supreme Court revisited the issue of enforceability of an arbitration agreement on the issue of

29. *Id.* (footnote omitted).

30. *See Vanegas*, 302 S.W.3d at 303.

31. *See, e.g., In re Halliburton Co.*, 80 S.W.3d 566 (Tex.2002) (examining arbitration agreement to determine its enforceability in at-will employment context).

32. *Id.* at 568.

33. *Id.*

34. *Id.* at 569

35. *Id.*

36. *Id.* (citation omitted).

37. *Id.* at 569–70.

38. *See* 128 S.W.3d 223.

39. *Id.* at 228.

40. *Id.* (citation omitted).

41. *Id.* (citation omitted).

whether consideration supported an arbitration agreement.[42] The Texas Supreme Court explained consideration must support an arbitration agreement, and "when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause."[43] The Texas Supreme Court found "the underlying contract between the [homeowners] and the retailer constituted valid consideration for the arbitration agreement as between them, as did their mutual promises to arbitrate disputes involving the manufactured home or its sale."[44]

Just after the Texas Supreme Court handed down its decision in *Palm Harbor Homes, Inc.,* the Texas Supreme Court entered yet another decision regarding arbitration agreements in the at-will employment context in *In re Dallas Peterbilt, Ltd.*[45] In that case, an at-will employee acknowledged he received a summary of a mutual arbitration agreement, which stated he relinquished his right to resolve covered claims with litigation.[46] After his employer terminated his at-will employment, the employee filed suit in state court rather than request arbitration.[47] The Texas Supreme Court found that by commencing his employment the employee accepted the arbitration agreement as a matter of law.[48]

The Texas Supreme Court handed down its most recent decision regarding arbitration agreements in May 2010.[49] The employer in *In re Odyssey Healthcare, Inc.,* just as Vista Hills here, was a non-subscriber to worker's compensation and provided its employees with an "Occupational Injury Benefit Plan."[50] The employee enrolled in the Occupational Injury Benefit Plan as a condition of her employment.[51] Relevant provisions of the plan included:

- All claims or disputes described below [including injury caused by negligence] that cannot otherwise be resolved between the Company and you are subject to **final and binding** arbitration. *This binding arbitration is the only method for resolving any such claim or dispute.*

- The Company is engaged in transactions involving interstate commerce ... and your employment involves such commerce. The Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement.

- Unless otherwise agreed to in writing by the parties, the arbitrator selected by the parties ... shall be selected from a panel of arbitrators located in Dallas County, Texas.

- Adequate consideration for this arbitration requirement is represented by, among other things, your eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Company and you.

- [T]he Company reserves the right to amend, modify, or terminate the Plan at any time; provided, however, that no such amendment or termination will alter the arbitration provisions in-

---

42. *See* 195 S.W.3d 672 (Tex.2006).

43. *Id.* at 676 (citations omitted).

44. *Id.* at 676–77 (citation omitted).

45. 196 S.W.3d 161 (Tex.2006).

46. *See id.* at 162.

47. *See id.*

48. *See id.* at 163.

49. *See In re Odyssey Healthcare, Inc.,* 310 S.W.3d 419 (Tex.2010).

50. *Id.* at 421.

51. *Id.*

corporated into this booklet with respect to, or reduce the amount of any benefit payable to or with respect to you under the Plan in connection with, an Injury occurring prior to the date of such amendment or termination. In addition, any such amendment or termination of the arbitration provisions incorporated into this booklet shall not be effective until at least 14 days after written notice has been provided to you.[52]

The Texas Supreme Court found the arbitration provision was supported by consideration because mutual obligations existed under the provision.[53] The Texas Supreme Court did not address the other consideration set forth in the agreement, specifically "your eligibility for (and not necessarily any receipt of) benefits under this Plan."

▮ Here, Vista Hills and Mendez exchanged mutual promises to arbitrate disputes; however, Vista Hill's promise to arbitrate is illusory. The Amendment or Termination of Plan provision of the SPD allows Vista Hills to unilaterally amend or terminate its obligation to arbitrate. To be clear, Vista Hills's ability to amend or terminate the arbitration agreement does not render the promise illusory in and of itself; rather, it is the lack of any notice to Mendez or other employees regarding such amendments or termination that renders the agreement to arbitrate illusory. For here, unlike in *Halliburton*, the Amendment or Termination of Plan provision does not provide any notice to the employee regarding amendment or termination and does not provide an interim period in which the employee with any outstanding dispute can request arbitration. As Vista Hills can nullify its obligation to arbitrate an outstanding dispute simply by amending or terminating the

arbitration provision, its promise to arbitrate is illusory and therefore unenforceable.

However, this does not end the Court's inquiry. In addition to offering its mutual promise to arbitrate, Vista Hills offered existing and future benefits under the Plan in exchange for Mendez's promise to arbitrate. Similar to the plan in *Odyssey Healthcare, Inc.*, the Plan here provides:

Adequate consideration for this arbitration requirement is represented by, among other things, your eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Company and you. Any actual payment of benefits under this Plan to or with respect to you will serve as further consideration for and represent your further agreement to the provisions of this arbitration requirement.

The Texas Supreme Court did not have occasion to address whether an employer's offer of benefits and an employee's promise to arbitrate could bind the employee to arbitrate disputes in *Odyssey Healthcare, Inc.* Based on this provision and the facts of the case, Mendez bound herself to arbitrate any disputes when Vista Hills provided Mendez benefits. The Court finds this conclusion is consistent with a logical extension of the Texas Supreme Court's decisions in *Halliburton, Palm Harbor Homes, Inc.,* and *Dallas Peterbilt, Ltd.*

There is no doubt Vista Hills's promise to provide benefits, as recited above, was illusory at the time it was made. Nonetheless, Vista Hills asserts, and Mendez does not deny, it provided Mendez benefits under the Plan. In so doing, Vista Hills's provision of benefits served as an acceptance of Mendez's promise to arbitrate disputes. Hence, a unilateral, valid, and enforceable contract was formed.

---

52. *Id.* (alteration in original).

53. *Id.* at 424.

### ii. Scope of the Arbitration Agreement

 In assessing whether the claims fall within the purview of the arbitration agreement, the Court must "decide whether the claim asserted is the type of claim the parties have agreed to arbitrate."[54] In doing so, the Court does not consider a claim's merits.[55] "Rather, the [C]ourt is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."[56] A motion to compel arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[57] Accordingly, "[d]oubts should be resolved in favor of coverage."[58]

 The arbitration agreement purports to cover:

- any legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state[,] or other governmental common law, statute, regulation[,] or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation[,] or ordinance was enacted before or after the effective date of this booklet).

In addition to ERISA claims, Mendez asserts state law negligence and intentional infliction of emotional distress claims arising from her on-the-job injury. These state law claims clearly fall within the scope of the arbitration agreement, as they relate directly to her alleged physical and psychological damages. As the parties have agreed to arbitrate these claims, the Court concludes arbitration is appropriate unless a federal law or policy renders the claims nonarbitrable.

### 2. No Federal Law or Policy Renders the Claims Nonarbitrable

 Mendez's claims are the type of claims that are often subject to arbitration. Mendez does not argue otherwise. The Court finds no federal law or policy, which renders the claims nonarbitrable.

### D. Mendez Does Not Set Forth Any Basis for Imposing Sanctions

 Defendants had a statutory right to remove Mendez's ERISA claims to federal district court and to request the Court to exercise supplemental jurisdiction over Mendez's state law claims. Likewise, Defendants had a legitimate right to attempt to enforce the Plan's arbitration provision. Contrary to Mendez's assertion, Defendants have not acted in bad faith. Notwithstanding the absence of bad faith, Mendez has wholly failed to comply with the Rule 11 requirements.[59] Therefore,

---

54. *Paper, Allied–Indus., Chem. & Energy Workers Int'l Union Local No. 4–2001 v. ExxonMobil Refining & Supply Co.*, 449 F.3d 616, 619 (5th Cir.2006) (citation omitted).

55. *See id.* (citation omitted).

56. *Id.* at 619–20 (citation and internal quotation marks omitted).

57. *Id.* at 620 (citation omitted).

58. *Id.*

59. Pursuant to Rule 11:

[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be

the Court will deny Mendez's motion for sanctions.

## IV. *CONCLUSION AND ORDERS*

Defendants did not waive their right to assert arbitration as an affirmative defense. Furthermore, the parties do not dispute the FAA applies to the arbitration provision in the Plan. A review of the Plan's arbitration provision and the facts of this case reveals the parties entered into a valid and enforceable arbitration agreement, supported by adequate consideration. Mendez's state law negligence and intentional infliction of emotional distress claims fall within the scope of disputes to be submitted to arbitration. No federal law or policy renders those claims nonarbitrable, nor do the parties contend one does. Finally, Mendez has not complied with Rule 11, nor has she raised any conduct on the part of Defendants that is sanctionable. Accordingly, the Court enters the following Orders:

1. "Defendants' Motion to Compel Arbitration" [Rec. No. 8] is **GRANTED.**

2. This case is **STAYED** pending the conclusion of arbitration proceedings conducted pursuant to the Plan.

3. The Clerk of the Court is instructed to administratively **CLOSE** this case.

4. Defendants are **ORDERED** to inform the Court of the conclusion of the arbitration proceedings conducted pursuant to the Plan.

served under [Federal] Rule [of Civil Procedure] 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial

5. Mendez's motion for sanctions and attorney's fees is **DENIED.**

**SO ORDERED.**

is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

FED.R.CIV.P. 11(c)(2).